J-A23031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| M.J., | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| S.J., | : | |
| | : | |
| Appellant | : | No. 117 WDA 2014 |

Appeal from the Order entered on December 19, 2013
in the Court of Common Pleas of Allegheny County,
Family Court Division, No. FD 07-009307-004

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　**FILED SEPTEMBER 30, 2014**

S.J. ("Father") appeals, *pro se*, from the Order denying his Petition for Contempt of Custody Order.  We affirm and remand for the calculation and award of reasonable counsel fees.

The trial court set forth the relevant factual and procedural history as follows:

> Father and M.J. ("Mother") were married on February 5, 1994[,] and had two children – Sa.J. (DOB 8/11/94) and Su.J. (DOB 10/9/00).  Mother filed for divorce in December 2007, with claims for custody, support, and equitable distribution.  Since then, the docket in this matter has been extremely active [(this appeal is the **fifteenth** of its kind)].  In recent years, the litigation has centered most heavily around Su.J.; Sa.J. has been emancipated for some time.  The primary issues in this latest appeal concern legal custody and contempt of custody orders.
>
> An appropriate timeline begins on November 27, 2012[,] when Hearing Officer Laura Valles held a hearing on the issue of custody modification. The Hearing Officer ordered, among other things, that Su.J. see a therapist to address mental health

concerns stemming from her parents' extensive litigation. Both parties filed exceptions. One of Mother's exceptions was that Father must be required to give the requisite medical consent to the therapist so that Su.J. can begin treatment. But[,] before [the trial c]ourt could rule on that exception, Father gave his consent[,] and [] Mother withdrew her contention. Following the exceptions argument, however, Father revoked his consent and Su.J. was forced to cease her treatment. When Mother brought the issue before the [trial c]ourt, the [trial c]ourt *sua sponte* ordered a hearing on legal custody. Father appealed [the trial c]ourt's scheduling of a legal custody hearing. [This Court affirmed the trial court's action. ***See M.J. v. S.J.***, 93 A.3d 507 (Pa. Super. 2013) (unpublished memorandum), *appeal denied*, 89 A.3d 1285 (Pa. 2014).]

In the interim, Father and Mother each appealed other unrelated matters. [***See M.J. v. S.J.***, 747 & 925 WDA 2013 (Pa. Super. filed July 16, 2014).] In August 2013, Mother retained counsel, and soon thereafter asked the [trial c]ourt to cancel the legal custody hearing after coming to an apparent resolution with Father. The armistice was short-lived, however, and Mother petitioned the [trial c]ourt to schedule a hearing on legal custody after all. The legal custody hearing was scheduled for December 5, 2013. Meanwhile, Father also brought a contempt petition, which th[e trial c]ourt consolidated with the December legal custody trial. At the December 5 consolidated trial, [the trial c]ourt found that Mother was not in contempt. It also discontinued the legal custody portion of the trial [and rescheduled it to another date] ….

Trial Court Opinion, 2/19/14, at 1-2 (citations and footnote omitted).[1]

The trial court entered an Order on December 19, 2013, denying Father's Petition for Contempt. Father filed a timely Notice of Appeal along with a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement. The trial court issued an Opinion.

On appeal, Father raises the following questions for our review:

---

[1] We note that the trial court's Opinion incorrectly lists the filing date of the Opinion as February 19, 2013.

1. Did the [trial c]ourt abuse its discretion by ignoring evidence about Mother's contempt [of the] custody [O]rder relating to [F]ather's in-service day with [Su.J.], knowing that [] Mother had previously violated [a] custody order resulting in make up time[,] per Order of June 12, 2013?

2. Did the [trial c]ourt abuse its discretion by ignoring evidence about Mother's contempt [regarding] scheduling extra-curricular activity for [Su.J.] during Father's custody time?

3. Did the [trial c]ourt abuse its discretion by not granting a hearing on contempt [of the] custody [O]rder with [Hearing Officer] Laura Valles so it could circumvent and avoid overruling [the Hearing Officer's] recommendations that are impartial as reflected by [the] November 27, 2012 hearing with [Hearing Officer] Laura Valles that resulted in recommendations unfavorable to Mother, and [Hearing Officer] provided continuity to how the in-service days got included in her recommendations and by failing to delineate reasons for [the] decision on contempt of custody [O]rders on record or in the [O]rder per 23 Pa.C.S.[A. §] 5323(d)?

4. Did the [trial c]ourt abuse its discretion and err[] by issuing [the] Order of September 10, 2013[,] granting Mother's petition for a hearing on legal custody when [the trial c]ourt did not have jurisdiction with appeal #723 WDA 2013 pending in the Superior Court? Court admitted to lack of jurisdiction, found [Mother] negligent in seeking hearing, asked [Father] for amount of damage[s] incurred with holding hearing, and yet failed to award damages to [Father].

5. Did the [trial c]ourt abuse its discretion [by releasing] a sealed Opinion for a related appeal[,] 747/925 WDA 2013[,] to Allegheny County Law Library?

Brief for Appellant at 3.

Our scope and standard of review are familiar: In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.

***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 (Pa. Super. 2012) (citation and quotation marks omitted).

In his first claim, Father contends that the trial court ignored evidence of Mother's contempt relating to his in-service day with Su.J., knowing that Mother had violated prior custody orders. Brief for Appellant at 5-6. Father also argues that Mother created conflicts in custody time by scheduling a vacation with Su.J. during a period when Su.J. was to spend time with Father for a religious holiday. ***Id***. at 6.

The trial court thoroughly addressed Father's first claim and determined that it is without merit. ***See*** Trial Court Opinion, 2/19/14, at 6-10. We adopt the sound reasoning of the trial court for the purpose of this appeal and affirm on this basis. ***See id***.

In his second claim, Father contends that the trial court abused its discretion in failing to find Mother in contempt for scheduling extra-curricular activities during Father's custody time. Brief for Appellant at 6. Father argues that the trial court acted with ill-will toward him in making its finding. ***Id***.

The trial court addressed Father's second claim and determined that it is without merit. ***See*** Trial Court Opinion, 2/19/14, at 10-12. Further, Father has not presented any evidence that the trial court acted with any ill-will toward him in it making its determination. Thus, we affirm as to this issue on the sound reasoning of the trial court. ***See id***.

In his third claim, Father contends that the trial court abused its discretion in not holding a hearing with Hearing Officer Laura Valles on the contempt Petition. Brief for Appellant at 6-7. Father argues that the trial court only schedules hearings with the Hearing Officer when it favors Mother, and ignores any recommendations made by the hearing officer that favor Father. *Id*. at 7.[2]

The trial court thoroughly addressed Father's third claim and determined that it is without merit. *See* Trial Court Opinion, 2/19/14, at 12-13. We adopt the sound reasoning of the trial court for the purpose of this appeal and affirm on this basis. *See id*.

In his fourth claim, Father contends that the trial court abused its discretion by granting Mother's Petition for a hearing on legal custody where an appeal regarding this issue was pending before this Court at 723 WDA 2013. Brief for Appellant at 7-9. Father argues that he was entitled to damages based upon Mother's filing of the Petition where she knew the trial court did not have jurisdiction due to the pending appeal. *Id*. at 8. Father further argues that Mother admitted that she was in contempt of custody Orders and that the trial court ignored the Hearing Officer's recommendations. *Id*. at 7-8. Father asserts that the trial court's legal

---

[2] We note that Father's argument does not contain a single citation to pertinent authority. *See* Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."); *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012). Nevertheless, we will address Father's argument.

custody hearing on March 13, 2014, was in error as it did not have jurisdiction over the matter. ***Id***. at 9.

The trial court addressed Father's fourth claim and determined that it is without merit. ***See*** Trial Court Opinion, 2/19/14, at 2-6.[3] We adopt the sound reasoning of the trial court for the purpose of this appeal and affirm on this basis. ***See id***. With regard to any claims not addressed by the trial court, we conclude that the evidence does not support his claims and, therefore, Father is not entitled to relief.

In his fifth claim, Father contends that the trial court abused its discretion by releasing to the public its opinion for 747 & 925 WDA 2013 in violation of an Order to seal the record. Brief for Appellant at 9.[4]

The trial court addressed Father's fifth claim and determined that it is without merit. ***See*** Trial Court Opinion, 2/19/14, at 13-14. We adopt the sound reasoning of the trial court for the purpose of this appeal and affirm on this basis. ***See id***.

Finally, we note with disapproval Father's appeal of the claims at issue in this matter. Indeed, Father has filed fifteen appeals, and has repeatedly litigated various orders for *de minimis* matters. ***See id***. at 11-12; ***see also***

---

[3] We also note that this Court affirmed the trial court's action in the appeal filed at 723 WDA 2013. ***See M.J.***, 93 A.3d 507 (unpublished memorandum at 10-12).

[4] Father again failed to include a single citation to pertinent authority in his argument. ***See*** Pa.R.A.P. 2119(a). Nevertheless, we will address Father's argument.

***M.J. v. S.J.***, 40 A.3d 187 (Pa. Super. 2011) (unpublished memorandum at 2-15) (wherein this Court discusses Father's various appeals from denials of his petitions for contempt and sanctions against Mother). Father has exhibited a sustained pattern of vexatious appellate litigation against Mother and we cannot ignore his continual abuse of the court system to harass her. ***See, e.g., M.J. v. S.J.***, 29 A.3d 832 (Pa. Super. 2011) (unpublished memorandum at 1-13) (wherein this Court disposed of Father's child support appeal and imposed against Father the counsel fees incurred by Mother, finding that Father had engaged, throughout the litigation, in obdurate, dilatory, and vexatious conduct); ***M.J. v. S.J.***, 29 A.3d 824 (Pa. Super. 2011) (unpublished memorandum at 1-12) (wherein this Court disposed of Father's appeal of an equitable distribution order, and awarded Mother attorney's fees because that appeal was wholly frivolous and Father's conduct was obdurate, dilatory, and vexatious).

Pennsylvania Rule of Appellate Procedure 2744 allows this Court to *sua sponte* impose an award of reasonable counsel fees against a party if we determine that "the appeal is wholly frivolous ... or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744;[5] ***see also Feingold v. Hendrzak***, 15 A.3d

---

[5] We note that under Appellate Rule 2744, "[a]n appellate court has no power under any statute or rule to award counsel fees for proceedings below and can only award fees for vexatious or obdurate conduct through a frivolous appeal." ***Twp. of South Strabane v. Piecknick***, 686 A.2d 1297, 1300 n.4 (Pa. 1996).

937, 943 (Pa. Super. 2011) (stating that this Court may *sua sponte* impose an award of counsel fees under Appellate Rule 2744). Upon awarding reasonable counsel fees, we may remand the case to the trial court so that it can calculate the precise amount. Pa.R.A.P. 2744.

Because Father has filed this frivolous Petition for Contempt and the subsequent appeal to vex Mother, we "find it appropriate to award [Mother's] counsel fees to deter [Father] from filing frivolous actions in the future." **Feingold**, 15 A.3d at 943. Accordingly, we affirm the trial court's Order denying Father's Petition for Contempt and remand to the trial court for calculation of reasonable counsel fees for this appeal.

Order affirmed. Case remanded for calculation and imposition of reasonable counsel fees to be awarded to Mother consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2014

- 8 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

M.J.,                                    :        **CHILDREN'S FAST TRACK**
                                         :
                Plaintiff,               :        No.: FD-07-09307-004
                                         :        117 WDA 2014
        v.                               :
                                         :
                                         :
S.J.,                                    :
                                         :
                Defendant.               :

OPINION

HENS-GRECO, J.                                              February 19, 2013

In this matter, S.J. ("Father"), *pro se*, appeals the Court's Order of December 19, 2013,
following a half-day trial on December 5, 2013, which addressed matters of contempt of custody
orders and legal custody. This Court denied Father's petitions for contempt and rescheduled the
hearing for legal custody. For the following reasons, Father's appeal is without merit, and this
Court's Orders should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

Father and M.J. ("Mother") were married on February 5, 1994 and had two children –
Sa.J. (DOB 8/11/94) and Su.J. (DOB 10/9/00). Mother filed for divorce in December 2007, with
claims for custody, support and equitable distribution. Since then, the docket in this matter has
been extremely active. In recent years, the litigation has centered most heavily around Su.J.; Sa.
J. has been emancipated for some time. The primary issues in this latest appeal concern legal
custody and contempt of custody orders.

An appropriate timeline begins on November 27, 2012 when Hearing Officer Laura
Valles held a hearing on the issue of custody modification. The Hearing Officer ordered, among

1

other things, that Su.J. see a therapist to address mental health concerns stemming from her parents' extensive litigation. *See* Order of Court, dated December 4, 2012, at Paragraph 10. Both parties filed exceptions. One of Mother's exceptions was that Father must be required to give the requisite medical consent to the therapist so that Su.J. can begin treatment. But before this Court could rule on that exception, Father gave his consent and so Mother withdrew her contention. *See* Order of Court, dated March 21, 2013, at Paragraph 4.[1] Following the exceptions argument, however, Father revoked his consent and Su.J. was forced to cease her treatment. When Mother brought the issue before the Court, the Court *sua sponte* ordered a hearing on legal custody. *See* Order of Court, dated March 28, 2013. Father appealed this Court's scheduling of the legal custody hearing. That appeal was docketed as 723 WDA 2013.

In the interim, Father and Mother each appealed other unrelated matters. *See* 747 & 925 WDA 2013. In August 2013, Mother retained counsel, and soon thereafter asked the Court to cancel the legal custody hearing after coming to an apparent resolution with Father. *See* Order of Court, dated August 2, 2013. The armistice was short-lived, however, and Mother petitioned the Court to schedule a hearing on legal custody after all. *See* Order of Court, dated September 10, 2013. The legal custody hearing was scheduled for December 5, 2013. Meanwhile, Father also brought a contempt petition, which this Court consolidated with the December legal custody trial. *Id.* At the December 5 consolidated trial, this Court found that Mother was not in contempt. It also discontinued the legal custody portion of the trial for reasons discussed below.

## DISCUSSION

### A. Jurisdiction and Damages

---

[1] The March 21, 2013 Order of Court was amended by an Order dated April 17, 2013 for reasons unrelated to the matters at hand.

2

With this procedural history fresh in the mind, it is prudent to discuss first Father's fourth statement of error. Verbatim, Father argues:

> "Court abused its discretion and erred by issuing Order of September 10, 2013 granting Mother's petition for a hearing on legal custody when the Court did not have jurisdiction with appeal #723 WDA 2013 pending in Superior Court. The Court admitted to lack of jurisdiction, and found Plaintiff negligent in seeking such hearing, asked Defendant for the amount of damage incurred with holding such hearing, yet failed to award damages to the Defendant."

*See* Father's Statement of Errors For Children's Fast Track Appeal ("Father's Statement of Errors"), at Statement 4.

The trial started with the legal custody matter, which began with Attorney Mark Marrow conducting his entire direct examination of Mother. When it was Father's turn to cross-examine Mother, he began to question Mother about the accuracy of her pretrial statement. *See* Transcript of Testimony, dated December 5, 2013 ("T.T."), at 39. This dialogue revealed that 723 WDA 2013 was in fact still active before the Superior Court. Recall that 723 WDA 2013 was Father's appeal of, among other things, this Court's *sua sponte* scheduling of a legal custody hearing. Mother's pretrial statement incorrectly stated that the Superior Court had denied Father's 723 WDA 2013 appeal on October 4, 2013. *See* Mother's Pre-Trial Statement Regarding Legal Custody. In actuality, the appeal was still awaiting a decision.[2] At this point in the trial, the Court went briefly off the record to view the various docketing statements and orders. *See* T.T., at 42. The Court then heard argument as to whether the legal custody hearing should proceed as scheduled. *Id.*, at 42-50. Out of an abundance of caution, this Court decided to discontinue the legal custody portion and proceed directly to the contempt issue.

---

[2] What had come down from the Superior Court on October 4, 2013, was an order denying Father's "Application for Relief." Presumably, Mother's counsel mistook this denial of relief for a denial of appeal 723 WDA 2013. *See* Mother's Pre-Trial Statement Regarding Legal Custody. In actuality, the denial of Father's "Application for Relief" was a denial of Father's "Motion for Contempt of Court Order by Trial Court with Release of Sealed Documents for Pending Appeals." This matter is discussed later in part D of this opinion.

Father's fourth statement of error makes four declarations: 1) that this Court's erred by issuing the September 10, 2013 Order scheduling the legal custody hearing; 2) that this Court admitted it lacked jurisdiction; 3) that it found Mother negligent in seeking a legal custody hearing; 4) that it found for Father damages. These points are exaggerations.

This Court was not exactly prepared to say that it lacked jurisdiction. Father's 723 WDA 2013 appeal stemmed from this Court's *sua sponte* scheduling of a legal custody hearing. On August 2, 2013, this Court vacated that order after it was represented to the Court that such a hearing would no longer be necessary. In September, Mother petitioned the Court to schedule another legal custody hearing. In other words, Father's appeal concerned only the *sua sponte* nature of the first scheduling. Another, separate scheduling – one sought by Mother – was how the legal custody trial of December came to fruition. This is quite a fine distinction. Another fine distinction would be that Father slept on his rights by not appealing the September 10, 2013 rescheduling order within the requisite 30 days, per Pa. R.A.P. 903. Also weighing on the Court's conscience was Mother's misstated pretrial statement and the gravity of a legal custody hearing.

A legal custody award is a weighty one, and one that would necessarily alter the parental rights of both parties. Certainly, the Court's decision also impacts Su.J., whose medical issues could remain temporarily unresolved. But no party presented any facts or argued that the Court should award emergency temporary legal custody to a parent while the procedural issue played out. Instead, the Court was faced with a potential defect, which caused the proceedings to be all the more opaque. As such, this Court acted to ensure not only that it reached the right conclusion, but also that its process was fair and transparent.

4

Nowhere in the record did this Court award Father damages or make a finding that Mother was negligent. Mother's pretrial brief was incorrect, but this Court could not say that Attorney Marrow misled it. To be clear, these are the type of situations where damages might be appropriate, regardless of whether the attorney was careless or had malice aforethought. But for the following reasons, this is not one of those situations.

After the September 10, 2013 Order of Court that scheduled the second legal custody hearing – the order that Father took issue with at trial – Father had 30 days to appeal and nearly three months to make his jurisdiction contention known to the Court. During this time period, despite the fact that Father was routinely in front of this Court on a motion, Father was silent on this matter. He was silent when he: sought leave to conduct discovery (*See* Order of Court, docketed September 17, 2013); sought to compel discovery and moved for emergency primary custody (*See* Orders of Court, dated October 23, 2013); sought to compel discovery again and sanction Mother (*See* Order of Court, dated November 27, 2013); submitted on December 2, 2013 his pretrial statement, which petitioned the Court to award him sole legal custody (*See* Father's Pre-Trial Statement, Proposed Order, Paragraph 1). Finally, at the start of the trial on December 5, 2013, Father was silent when this Court asked whether he sought to address any preliminary matters. *See* T.T., at 4.[3] Only after Mother presented her entire case for legal custody did Father address the jurisdiction matter.

If Father did incur damages, they were entirely avoidable. A glance at the docket will reveal that Father, though *pro se*, is especially familiar with the motions and appellate processes.

---

[3] The Court notes here that the transcript is unclear as to Father's response. *See* Lines 19-20. The audio recording of the trial reveals that Father did affirmatively respond to the preliminary matters question. He stated that he included in his pretrial statement issues of law and their noted impact. But here too, Father was silent on the matter of jurisdiction. In his Issues of Law section, Paragraph 1 refers to a hearsay matter with the initial March scheduling order. Paragraph 2 relates to the actual *form* of the custody complaint and corresponding verification, pursuant to Rules 1915.3 and 1915.15(a). *See* Father's Pre-Trial Statement for Legal Custody and Contempt of Custody Order.

If Father meant to suggest that his delay was excusable because he is not an attorney, then he should heed the Superior Court's warning. *Id.*, at 46. "[A]ny layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Rich v. Acrivos*, 815 A.2d. 1106, 1108 (Pa. Super. 2003) (citations omitted). It would be inappropriate to award Father damages, and this Court's decision not to do so was well within its discretion.

## B. Contempt of Custody Orders

Moving now to the heart of the appeal, Father argues that this Court erred when it did not find Mother in contempt. There are two allegations of contempt, which stem from two separate custody orders and two separate incidents. The Court addresses the allegations in order. Verbatim, Father alleges:

> "Court abused its discretion by ignoring evidence about Mother's contempt with custody order relating to father's in-service day with minor child, knowing that Mother had previously violated custody order resulting in make up time per Order of June 12, 2013."

*See* Father's Statement of Errors, at Statement 1.

Father did not testify to the facts leading up to the incident in question, and so the Court is informed by Mother's pretrial statement. In any event, the following facts are not in dispute: Father had custody time with Su.J. during the Rakhee holiday from August 20, 2013 at 5:30 p.m. until August 21 at 5:30 p.m.; when Mother appeared at Father's office to pick up Su.J. after the holiday custody time ended, Father refused to release the child; after a round of telephone calls and emails between the parties and Mother's counsel, Father ultimately relinquished custody. *See* Plaintiff's Pre-Trial Statement in Opposition to Defendant's Motion for Contempt of Custody, at 2. Father petitioned the Court to find Mother in contempt of custody order for *forcing him to*

6

turn Su.J. back over to her Mother. *See* Father's Motion for Contempt of Custody Order, dated September 10, 2013.

The parties' arguments are simple. Father contends that he should have had custody of Su.J. *all day* on August 21 and until 5:30p.m. on Thursday August 22, because August 22 was technically an "in-service day" according to the school calendar. Mother argues that she rightfully demanded Su.J. be returned to her, as was outlined just two months prior in a June 12, 2013 Court Order. Ultimately, this Court finds that Mother was not in contempt, but simple arguments beget lengthy explanations.

The conflict here is a battle of custody orders. Paragraph 5 of this Court's Order, dated April 22, 2013, states the following:

> "The parties recognize that Su.J. has an average of 11 in-service days per school year. Father shall be entitled to have Su.J. for five (5) of those in-service days and Mother shall have Su.J. for the remaining six (6) days. The parties shall alternate the in-service days with Father receiving the first in-service day in all even years and Mother receiving the first in-service day in all odd years...."

*Id.*

Father argues that he did not have to return Su.J. on August 21, 2012, because, per the above language, the following day was his in-service day. Mother testified that in-service days were understood to mean only those in-service days during the school year, and the school year had yet to begin.[4] *Id.*, at 79. At first blush, this Court was inclined share Mother's common sense understanding that in-service days only apply to those that occur during the school year. Typically, in-service days are only outlined in custody orders, because they generally result in a day off of school for a child, thus altering the general custody arrangements of the parents, i.e. parents might have to call off work or find alternative child care. An in-service day that occurs

---

[4] August 21st, 22nd, and 23rd were all in-service days according to the school district's calendar. August 26th was the first day of classes.

7

during the last days of summer vacation has zero consequence on the lives of parents and their children. Certainly, this Court was not persuaded by Father's attempt to distinguish between the start of *school* and the start of *classes*. *Id.*, at 63-64. But the reason this Court did not buy Mother's argument outright – and the reason this Court takes the time to elaborate – is that Father has a point.

Paragraph 5 states that Su.J. has an average of 11 in-service days. And when counting up the days, it is apparent that the Order accounts for the in-service days both *before* and *after* the children's school year, as the total sum is 11. *Id.*, at 85. What's more, Mother specifically entered onto the Family Wizard calendar[5] those odd-numbered summer in-service days, which belonged to her.[6] It is important to articulate that this Court understands Father's argument. The question of whether Mother's conduct rises to the level of contempt is immaterial, however, because this Court finds that another custody order provision wholly trumped the in-service day provision in this case.

The current custody arrangement operates under two custody orders. The first Order, dated April 1, 2011, provides for each parent's vacation time. *See* Order of Court, dated April 1, 2011, at Paragraph 10. Mother will have priority over scheduling in odd years. *Id.*, at Paragraph 11. In 2013, Mother took her vacation time from August 15–22. The vacation time ended on a Thursday, and the schedule was such that Mother had the immediate weekend – August 23–25.

The second custody order, dated April 22, 2013, provides that Father shall have Su.J. for the holiday of Rakhee. *See* Order of Court, dated April 22, 2013, at Paragraph 4. And so there arose a conflict, whether Mother would retain custody of Su.J. from August 15 straight thru August 25

---

[5] The "Family Wizard" or "Family Wizard calendar" refers to the website OurFamilyWizard.com. It is a program that enables divorced parent to keep track of a child's schedule, medical records and other important documentation.
[6] Though, that Mother did not seek to enforce *her* in-service day – the same day of Rakhee – infers that she did not think such in-service days counted.

8

or whether Father would be able to exercise his custodial rights to enjoy time with Su.J. for the Rakhee holiday on August 20-21. Unable to resolve this conflict, the parties brought the matter to motions court on June 12, 2013.

This Court decided that Mother's vacation dates will remain in effect, but that the parties shall cooperate to allow Su.J. to celebrate Rakhee with Father. *See* Order of Court, dated June 12, 2013. This Court enforced Paragraph 11 of the April 1, 2011 Order and Paragraph 4 of the April 22, 2013 Order. It being an odd year, Mother's vacation had first priority, but the circumstances were such that Su.J. was also able to spend Rakhee with Father. Neither party addressed the in-service day issue.

Father's response to this decision is that at the June motions day, he had no notice of the in-service day calendar. Because he had no notice, the reasoning goes, Mother is in contempt when she scheduled her vacation on his in-service day. This logic is flawed.

At the June motions day, Father had notice that Mother's scheduled vacation time would abridge his in-service day on August 22, yet he chose to only contest the Rakhee holiday. Father argues that at the time of the June motions, he did not have the school calendar. *See* T.T., at 60. Father testified that he receives the calendar from the school in hard copy form in early August. *Id.*, at 62. Be that as it may, the simple fact is that Father had access to the school calendar online as far back as the spring and had notice that Mother's vacation time would occur on his in-service day. At trial, Father even introduced evidence that on May 2, 2013, Mother entered her August in-service days on the Family Wizard. *Id.*, at 54. *See* Exhibits 3-4. The Court used the same Family Wizard calendar at the June motions date.

In proving his point that the custody order should contemplate summer in-service days, he undermines his position that he had no notice of said in-service days. Mother had to get the

9

school calendar from somewhere, and indeed she got it online. *Id.*, at 78. Asked on cross-examination how Mother received the school calendar, Father testified that he did not know and that he would be speculating. *Id.*, at 62-63. Asked whether he bothered to find out, Father testified "nope." *Id.*, at 63. To summarize, Mother's vacation dates had priority over Father's in-service day, per Paragraph 11 of April 1, 2011 custody order. Father had an opportunity to make a counterargument at the June motions day, but chose not to do so. Father's first statement of error is meritless. Father's next statement of error is that this Court ignored evidence about Mother's second alleged incident of contempt.

Verbatim, Father alleges:

"Court abused its discretion by ignoring evidence about Mother's contempt with scheduling extra-curricular activity for the child during Father's custody time."

*See* Father's Statement of Errors, at Statement 2.

The custody provision of which Mother's is alleged contempt is Paragraph 18 from the parties April 1, 2011 Order of Court. It states:

"Mother and Father will discuss and seek the permission of the other parent prior to enrollment of the children in any extracurricular lessons/activities, especially if those activities will mandate both parents' participation during their custody period."

*Id.*

In this instance, Father petitions the Court to hold Mother in contempt when she scheduled Su.J.'s tennis lesson on September 2, 2013 – Labor Day – a holiday that belonged to Father in odd years. Again this Court refuses to follow Father's logic, and so it declined to find Mother in contempt.

First, the scheduling of the tennis lesson was inadvertent. When Mother entered Su.J.'s lessons on the Family Wizard calendar, she used a feature of the Family Wizard program that

10

allows one to label an event as a reoccurring activity. This way, Mother did not have to schedule Su.J.'s tennis lesson every week. Instead, she entered the activity once, and the calendar would reflect a lesson every single Monday. *Id.*, at 81. As it so happened, a tennis lesson was mistakenly scheduled on Father's custody day. Father even acknowledged the inadvertent nature of the mistake. *Id.*, at 67.

Second, Father was aware of the conflict, but twice chose not to address it. When there is a scheduling conflict, the Family Wizard program will send an alert message to the parents. When, on August 25, 2013, Father entered on the Family Wizard that he had Labor Day on September 2, 2013, Father received a conflict alert. *Id.*, at 68-69. Father made no attempt to find out whether the tennis lesson was still on in light of the holiday or whether the lesson should be canceled. *Id.*, at 69. Similarly, a few days later on September 1, 2013 – the day before Labor Day – Father and Mother communicated via email. *Id.*, at 73. But even then Father did not ask Mother to find out whether tennis was still on the agenda. *Id.*, at 65. Father testified that was not his responsibility to do so. *Id.* Finally, lest this Court neglects to mention, there was *no actual conflict*, because there was never supposed to be a tennis lesson in light of the holiday. *Id.*, at 65-66.

In this alleged incident of contempt, this Court found that Mother was not in violation of the custody order and, to the extent that Mother did not adhere to order's exact letter, such a transgression is wholly *de minimis*.

Su.J. is an extremely involved child, participating in a wide range of extra-curricular activities. Scheduling mishaps are as unavoidable as they are curable. But rather than communicate about the potential conflict, Father's panacea is to bring Mother before a tribunal for a violation of a court order. Indeed, this not the first time Father sought to hold Mother in

11

contempt for a *de minimis* matter. *See* this Court's Opinion regarding Father's 775 WDA 2011 appeal, dated June 13, 2011. Such an aggressive approach confounds this Court.

Father freely admitted that he ignores Family Wizard conflict alerts (T.T., at 68) makes no effort to resolve a scheduling conflict (*Id.*, at 69), and denies fault (*Id.*) and responsibility (*Id.*, at 73). Father cannot credibly argue that he is excused from being vigilant about the Family Wizard calendar, because "he has a business to run" (*Id.*, at 72) while at the same time argue that the conflict responsibilities are those of Mother (*Id.*, at 88-89).

When this Court speaks of Father's lack of credibility, it refers to two notions that are completely paradoxical. Father first expects this Court to believe that he does not realize when potential custody conflicts have arisen. Second, Father expects this Court to ignore the jeweler's precision with which he seeks to enforce the Court's order. What Father does not understand is that his ignorance of the scheduling conflict, even if true, is not an excuse. Indeed in this instance, it seems willful. Directed by Father to Paragraph 18 of the April 1, 2011 custody order, this Court's eyes cannot help but wander down to Paragraph 21, which requires both parents to utilize the Family Wizard program to the best of their abilities. The evidence submitted at trial makes it clear that Mother is meeting that obligation, and that the scheduling error is *de minimis* if that.

## C. Procedure

Verbatim, Father's third statement of error is:

> "Court abused its discretion by not granting a hearing on contempt with custody order with H.O. Laura Valles so it could circumvent and avoid overruling H.O. recommendations that are impartial as reflected by November 27, 2012 hearing with Laura Valles that resulted in recommendations unfavorable to Mother, and H.O. provided continuity to how the in-service days got included in her recommendations."

*See* Father's Statement of Errors, at Paragraph 3.

12

Here, Father apparently argues that this Court erred when it decided to hear Father's contempt petition itself, rather than schedule the matter before Hearing Officer Laura Valles. Father's reasoning seems to be that the hearing officer's recommendations were "impartial" and "unfavorable to Mother," though Father took exceptions to Hearing Officer Valles' temporary order as well. However, there exists no rule that gives Father the option to pick in front of whom he sits. Rule 1915.4-1 gives *the court* the ability to use a hearing officer as an alternative procedure in a custody case. *See* Explanatory Comment – 1994 to Rule 1915.4-1 (emphasis added). No such avenue exists for a litigant. As to the last clause of this statement of error, Father argues that Hearing Officer Valles would provide a "continuity" regarding the aforementioned in-service days. On this point, this Court reiterates that it understands Father's contention regarding the number of in-service days. But this Court is well within its discretion to reach different conclusions.

Verbatim, Father's fifth statement of error is:

"Court erred by failing to delineate its reasons for the decision on contempt of custody orders on the record or in order per 23 Pa. C.S. 5323(d)."

*See* Father's Statement of Errors, at Statement 5.

Here, Father misreads the law. Section 5323(d) reads: " Reasons for award.--The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." This statute pertains to a *custody* award, as its title makes clear. It does not pertain to a *contempt* finding – or as Father would suggest – the absence of a contempt finding.

### D. Sealed Record Error

Verbatim, Father's final contention is:

"Court's abuse of discretion is further evidenced by its violation of order to seal record with release of Opinion for subject appeal 747/925 WDA 2013 to Allegheny County Law Library."

13

*See* Father's Statement of Errors, at Paragraph 6.

This statement of error refers to an administrative mishap on the part of the Court. It also relates to jurisdiction confusion alluded to in Footnote 2 *infra*. In the Family Division of the Allegheny County Court of Common Pleas, it is standard procedure to circulate all written opinions to the Allegheny County Law Library. This is done via email. The opinions are kept in a box undifferentiated by anything other than the author's name. This procedure does not apply, however, when the opinion is from a case with a sealed record. The instant case has a sealed record. Despite precautions already in place, two of this case's many opinions were mistakenly circulated and made it to the box in the law library, where they were discovered by Father. When Father brought the matter to the Court's attention in September 2013, this Court immediately contacted the library and gave instructions to destroy the documents. Additionally, more procedures were instituted to prevent the reoccurrence of the error. This mishap, unfortunate as it may be, has nothing to do with the issues before the Court at the December 5, 2013 trial. In fact, Father already brought this matter to the Superior Court's attention. *See* Father's Motion for Contempt of Court Order by Trial Court with Release of Sealed Documents for Pending Appeals, served to this Court on September 26, 2013.

## CONCLUSION

For the aforementioned reasons, Father's Statements of Error are meritless and this Court's Orders of December 19, 2013 should be affirmed.

BY THE COURT:

_____, J.

14