J-A16027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JANET LEWIS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONNIE L. LEWIS, SR., | |
| Appellant | No. 152 EDA 2015 |

Appeal from the Order of December 10, 2014
In the Court of Common Pleas of Chester County
Civil Division at No(s): 11-11924

BEFORE:  LAZARUS, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                          **FILED JULY 10, 2015**

Appellant, Ronnie L. Lewis, Sr., appeals from the order filed on December 10, 2014, finding him in contempt of a settlement agreement he entered with Janet C. Lewis (Wife).  Upon review, we affirm.

The trial court set forth the facts and procedural history of this case as follows:

> [Wife] and [Appellant] were married on May 8, 1970.  On October 28, 2011, Wife filed a complaint in divorce.  On May 19, 2014, the parties reached a settlement on all issues and placed all terms of the settlement agreement [(the Agreement)] on the record in front of Special Master Lynn A. Snyder.
>
> On July 29, 2014, Wife filed a petition for contempt and enforcement, claiming that [Appellant] failed to list three properties for sale pursuant to the Agreement, and failed to pay Wife $253,000[.00] pursuant to the Agreement.  At a hearing on October 24, 2014, the parties agreed that [Appellant] would pay Wife $162,000[.00] in cash on or about December 1, 2014 to resolve the issue of the listing

*Retired Senior Judge assigned to the Superior Court.

of three properties.  [Appellant] agreed that he owed Wife [an additional] $253,000[.00], however, he claimed that Wife was responsible for paying the taxes on those funds.

On December 9, 2014, [the trial court] found [Appellant] in contempt of the [] Agreement and ordered him to pay Wife $162,000[.00] if it had not been paid; and $253,000[.00] on or before December 22, 2014 in cash and not as a rollover of retirement assets.  [The trial court] also ordered [Appellant] to pay any tax consequences as a result of the source of the $253,000[.00] payable to Wife.  Additionally, [the trial court] ordered [Appellant] to pay [$2,000.00] in Wife's counsel fees and expenses.

On January 6, 2015, [Appellant] filed a motion for reconsideration of the December 9, 2014 order.  On January 7, 2015, [the trial court] denied the motion for reconsideration.

Trial Court Opinion, 2/2/2015, at 1-2 (superfluous capitalization and record citations omitted).  This timely appeal followed.[1]

On appeal, Appellant presents the following issues for our review:

A. Did the trial court err in finding Appellant in contempt of the parties['] settlement agreement dated May 19, 2014?

B. Did the trial court err in finding Appellant responsible for the tax consequences as a result of the $253,000[.00] payable to Wife?

C. Did the trial court err in finding Appellant responsible for Wife's counsel fees in connection with enforcement of the Agreement as Wife has never been able to access those funds since the summer of 2014?

_____

[1]   Appellant filed a notice of appeal on January 9, 2015.  On the same day, the trial court entered an order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a concise statement of errors complained of on appeal. Appellant complied timely on January 29, 2015.  On February 2, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

D. Did the trial court err in inferring [the] intent of the parties with regard to the tax consequences when the language of the Agreement clearly makes [Wife] responsible for taxes?

Appellant's Brief at 4 (superfluous capitalization and suggested answers omitted).

Initially we note, at oral argument, Appellant conceded that the only issue for our consideration is whether the trial court erred by determining he was responsible for the tax consequences resulting from the sale of funds from his retirement account, the proceeds of which were to go to Wife via the terms of the Agreement. Thus, we need not address Appellant's issues A or C, as he waived those claims. *See Coons v. McKees Rocks Borough*, 90 A. 141 (Pa. 1914) (holding that grounds of appeal or assignments of errors not discussed on appeal, either in the brief or at oral argument, will be deemed waived or abandoned and will not be considered). Thus, we turn to Appellant's allegations of error B and D, as they are interrelated.

Appellant's contentions regarding appellate issues B and D are as follows:

The [trial court erred when it] found that the use of the words "in cash" [(as contained in the parties' Agreement)] meant that Wife should receive the $253,000.00 as a net final claim. While acknowledging that there is nothing in the provision indicating which party shall pay the taxes, the [trial court] intimates that the parties would have indicated Wife's tax responsibility if that [were] the intent. Using the [trial court's] own logic, the parties would have indicated the $253,000.00 to be the final sum if that [were] the intent. By way of common sense example, if an employer

> offers an employee $100,000.00 for a position, is it reasonable for that employee to expect the employer to pay his income tax?

Appellant's Brief at 7. In conjunction with the Agreement, Appellant maintains that the parties also agreed to incorporate an exhibit, Exhibit J-1, which states, in pertinent part:

> Nothwithstanding the foregoing or anything else in this Agreement to the contrary, [e]ach party shall indemnify the other against and hold him or her harmless from any tax consequences arising from the ownership of the assets he or she will be receiving and/or retaining pursuant to the terms of this Agreement, due to events prior to the date of the transfer of those assets.

*Id.* Appellant claims "this provision is unambiguous in making Wife responsible for the taxes on the transfer of the $253,000.00 as the tax is assessed after the transfer." *Id.* at 8.

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012). "To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Id.* at 706 n.7.

Moreover, when interpreting a marital settlement agreement,

the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercise of sound discretion. […] On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An abuse of discretion or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

\*       \*       \*

Marital settlement agreements are private undertakings between two parties, each having responded to the give and take of negotiations and bargained consideration. A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification.

Established Pennsylvania law states:

> When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

In other words, the intent of the parties is generally the writing itself.

*  *  *

Additionally, this Commonwealth has accepted the principle in Restatement (Second) of Contracts § 205 that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. The duty of good faith has been defined as honesty in fact in the conduct or transaction concerned.

> The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005) (footnote, quotations, original brackets, and internal citations omitted).

Here, the parties set forth their Agreement on the record, in pertinent part, as follows:

> Wife is going to receive [] $415,000[.00] from [Appellant], [$]253,000[.00] of which shall be paid from his retirement account in cash within 30 days from today's date, not the date of the decree, 30 days from today. That leaves [$]162,000[.00] due and owing. The properties that are being sold, all proceeds go to [W]ife. Any shortfall between what she receives and from the properties and the [$]162[,000.00] shall come from [Appellant's] retirement account.

N.T., 5/19/2014, at 5.

Herein, the trial court determined:

> By agreeing to the term 'in cash,' the parties intended that Wife receive the $253,000.00 as a net final sum. They could have agreed to a rollover or other non-cash treatment, but chose not to do so. If Wife were responsible for tax, she would not be receiving $253,000[.00] as agreed.

Trial Court Opinion, 2/2/2015, at 3.

We agree. The Agreement clearly states that Wife was to be paid a cash sum certain from a specific source, Appellant's retirement account. Black's Law Dictionary defines "cash" as "money or its equivalent" and "currency or coins, negotiable checks, and balances in bank accounts." BLACK'S LAW DICTIONARY 229 (8th ed. 2004). The Agreement does not, as Appellant suggests, state that Appellant is permitted to transfer funds to Wife with the tax consequences to be assigned to her. It clearly states that Appellant is to pay Wife in cash. If the parties agreed to assign Wife the tax consequences from liquidation of Appellant's retirement account, the parties could have structured a rollover from Appellant's retirement account to a retirement account for Wife. The plain language of the Agreement does not

- 7 -

designate such a transfer. Moreover, we note that Appellant could have chosen any source to pay Wife the $253,000.00 owed. By entering the Agreement, he freely chose the vehicle to do so – his retirement account. The tax consequences of that decision are his. As such, by failing to pay Wife, in cash, the amount due to her under the Agreement, Appellant willfully failed to comply with its plain terms. We discern no abuse of discretion or error of law in holding Appellant in contempt for willfully failing to abide by the terms of the Agreement.

To support his contention that the trial court erred in refusing to impose tax consequences on Wife, Appellant posits an example wherein he asserts that an employee could not reasonably expect his employer to pay income taxes on a proposed salary of $100,000.00. This analogy compares apples to oranges. While it is correct that the employee cannot reasonably expect his employer to pay his income taxes, no one could seriously argue that the employee should bear the responsibility for tax consequences that arise from transactions undertaken by the employer to generate funds used to pay its employees. But, this is what Appellant asks us to do in this case. Here, Appellant liquidated real property and/or retirement account assets in order to generate cash that he ultimately transferred to Wife pursuant to the trial court's order. The tax consequences that Appellant seeks to impose on Wife attached to the sales transactions involving real property and/or retirement account assets that Appellant undertook in order to generate

cash, not the proceeds from those sales. These tax consequences, in turn, trace back to Appellant's ownership of the underlying real property and/or retirement account assets. Since Appellant never transferred the underlying assets to Wife, and since Wife never received ownership of those assets, there are no tax consequences "arising from ownership" of a transferred asset that can be imposed upon Wife.

Accordingly, we reject Appellant's reliance on Exhibit J-1 appended to the Agreement. Again, that provision provides:

> Nothwithstanding the foregoing or anything else in this Agreement to the contrary, [e]ach party shall indemnify the other against and hold him or her harmless from any tax consequences arising from the ownership of the assets he or she will be receiving and/or retaining pursuant to the terms of this Agreement, due to events prior to the date of the transfer of those assets.

Appellant's Brief at 7.

Appellant's argument is that Wife must hold him holdless for tax consequences arising from the sale of real properties or liquidation of assets from his retirement account. In this case, however, Wife never acquired ownership of either real property or the assets held in the retirement account. Instead, Wife acquired cash that Appellant derived from the liquidation of his retirement account or real properties. Since Wife never acquired ownership of retirement assets or real properties that Appellant liquidated, she was never obligated under the cited provision as an owner of the assets or properties that incurred tax consequences. The tax

consequences attached to the liquidation of retirement funds and real properties that Appellant undertook to generate liquid assets to give Wife. Wife never acquired the real properties or retirement funds directly. Hence, this provision is inapplicable and the $253,000 due to Wife in cash was a final sum. Thus, we discern no error.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2015