Tammy LANGENDORFER, Appellee,

v.

Caro SPEARMAN, Appellant
(Two Cases).

Superior Court of Pennsylvania.

Argued Feb. 27, 2002.
Filed April 3, 2002.

Alan M. Lerner, and Mark A. Momjian, Philadelphia, for appellant.

Brian S. Chacker, Philadelphia, for appellee.

Before: McEWEN, P.J.E., LALLY–GREEN and BENDER, JJ.

BENDER, J.

¶ 1 Caro Spearman (Father) appeals from two orders of the Court of Common Pleas of Philadelphia County that granted Tammy Langendorfer's (Mother) petition for contempt and ordered a change in legal

and primary physical custody of the parties' child from Father to Mother.[1] We vacate the orders and reinstate the May 5, 1998 final custody order.

¶ 2 The parties are the parents of Sidney Patrick Spearman, born December 19, 1988. Father, who resides in Philadelphia, Pennsyvania, and Mother, who lives in Alaska, are not and have never been married. The initial custody litigation began in 1993. The court issued a number of custody orders over the years, namely, in 1994 when Mother was awarded primary physical custody[2] and then again in 1998 when Father was awarded primary physical custody.

¶ 3 In addition to the provisions granting primary physical custody to Father, the 1998 order granted partial physical custody to Mother each year for a period of eight weeks in the summer, beginning three days after the school year ended. The parties were to share the costs of transportation and were directed to allow unrestricted telephone and written communication between the child and the non-custodial parent. The order also required that each parent apprise the other of the whereabouts of the child, including residential address and phone number; a 48–hour advance notice of any change in residence had to be communicated.[3]

¶ 4 On January 26, 2001, Father filed a petition to temporarily modify custody, seeking an order to prevent contact by all family members with the child. Father made this request as a result of the child's enrollment in a therapeutic foster care program called "Mentor." The child has had a history of emotional problems, dating back to at least 1994, when Father arranged for counseling for Sidney at a mental health facility in Philadelphia. Mother also sought treatment for the child in 1995, when she admitted Sidney to a mental health hospital following his threats to kill himself.

¶ 5 In the fall of 2000, Father admitted the child to the Eastern Pennsylvania Psychiatric Institute (EPPI), following several attempts by Sidney to run away after he was disciplined at school. At EPPI's suggestion, Father enrolled Sidney in the Mentor program and Father's petition for temporary modification ensued.[4]

¶ 6 On February 2, 2001, Mother filed the contempt petition presently at issue before this Court. The petition alleges that Father willfully violated the 1998 custody order and requests that the court find that:

(a) Father is in Contempt of Court for failure to comply with the Custody Order dated May 5, 1998; and

(b) Father is ordered to timely comply with all aspects of the Court's May 5, 1998 Order, including the following[:]

  (1) Father is ordered to apprise Mother of the whereabouts of Sidney;

  (2) Father is ordered to provide Mother with an address and phone number at which Sidney may be reached;

---

1. On August 6, 2001, this Court directed that the appeals be consolidated.

2. The 1994 order, which awarded Mother primary physical custody, also directed shared legal custody and provided that Father would have partial custody for one month in the summer. Costs of transportation were to be shared.

3. Mother appealed the 1998 custody order, but this Court affirmed that order on June 22, 1999.

4. No hearing on this petition has ever been scheduled.

(3) Father is ordered to refrain from interfering with Mother's and Mother's family members' attempts to contact Sidney;

(4) Father is ordered to refrain from interfering with Mother's right to partial physical custody of Sidney; and

(5) Father is ordered to split the cost of Sidney's travel in order to effectuate Mother's partial physical custody rights.

Mother's Petition for Contempt, 2/2/01, at 3–4.

¶ 7 The facts underlying Mother's allegations concern the failure of the parties to coordinate travel arrangements for the summer of 1999 and 2000. There is no dispute that Father purchased a return ticket from Alaska to Philadelphia for Sidney for the end of the 1999 summer vacation period. There is also no dispute that Mother did *not* purchase a ticket for Sidney to make the trip from Philadelphia to Alaska at the beginning of the summer. At the contempt hearing the parties disputed who in fact tried to contact the other, how many times and who failed to return calls after messages were left. The record also reveals that Father attempted to introduce correspondence from his attorney to Mother's attorney showing his attempts to arrange transportation, but the court held that the letters were inadmissible hearsay.

¶ 8 Another area of contention between the parties concerns Mother's alleged inability to contact Sidney by telephone. As part of his response, Father attempted to place in evidence recordings of telephone calls between Mother and Sidney to disprove Mother's allegation that she was denied telephone access. These recordings were not admitted by the court on the basis that they were cumulative. Father did admit that he has no long distance phone service at home and uses a cell phone or phone cards instead. Also Mother refuses to supply a direct phone number to Father. Rather Father calls Mother's mother and leaves messages to be relayed to Mother.

¶ 9 The parties also are at odds over whether or when Father advised or attempted to advise Mother about Sidney's admission to EPPI and his subsequent placement into the Mentor program. Father acknowledges that he informed Mother six weeks after Sidney's initial admission to EPPI, but Mother contends that she only found out about Sidney's placement into the Mentor program one week prior to the contempt hearing and only learned of the admission to EPPI at the hearing.

¶ 10 Following the March 5, 2001 hearing, the court issued its order granting sole legal and physical custody to Mother and restricting Father's visitation. No other "sanction" was imposed. The court's order, dated March 5, 2001, states in its entirety:

AFTER HEARING MOTHER'S PETITION FOR CONTEMPT OF CUSTODY AND FATHER'S RESPONSE THERE TO [sic] IT IS HEREBY ORDERED AND DECREED AS FOLLOWS: MOTHER'S PETITION FOR CONTEMPT IS GRANTED; MOTHER, TAMMY W. LANGENDORFER SHALL, AS OF THIS DATE, HAVE SOLE LEGAL AND PRIMARY PHYSICAL CUSTODY OF THE CHILD, SIDNEY SPEARMAN. ALL DECISIONS REGARDING SIDNEY SPEARMAN SHALL BE IN THE SOLE DISCRETION OF MOTHER. FOR THE BEST INTEREST OF THE CHILD, THIS COURT FURTHER ORDERS THAT FATHER MAY HAVE SUPERVISED VISITS WITH THE CHILD AT THE MENTOR

AGENCY OR ANOTHER SUITABLE PLACE AS AGREED TO BY MOTHER.

¶ 11 In its opinion supporting the order, the court stated that the hearing was held on Mother's contempt petition and that it "took this action to remedy Father's contemptuous conduct towards Mother's legal and physical custody right to the child." Trial Court opinion (T.C.O.), 5/22/01, at 1. Notably, the "NOTICE AND ORDER TO APPEAR PETITION FOR CONTEMPT" issued by the court made no mention that custody of Sidney was at issue. Rather it required attendance at the scheduled hearing, only referencing that legal proceedings would take place concerning the allegations of willful disobedience of a custody order. Moreover, the court's notice to Father stated that "if the court finds that you have wilfully [sic] failed to comply with its order of custody, you may be found to be in contempt of court and committed to jail, fined or both." Notice and Order to Appear, 2/6/01.

■ ¶ 12 Father appealed to this Court from the March 5, 2001 order. He also filed a petition for contempt against Mother. Mother then filed a petition to modify custody. After a brief hearing on June 11, 2001, the court dismissed the petitions filed by each parent, indicating that the court had already ruled on the matter of custody in its March 5th order and that the March 5th order "superseded any and all other orders issued in this matter."[5] T.C.O., 10/23/01, at 2.

¶ 13 Father raises the following issues for our review:

1. Did the lower court commit legal error and exceed its judicial authority in a civil contempt proceeding by ordering as punishment a transfer of sole legal and physical custody to Mother, thereby modifying permanently an existing custody order, without having before it a formal petition to modify?

2. Did the lower court violate Father's fundamental right to due process by unilaterally transferring sole legal and physical custody to Mother, without any notice to the parties or their counsel?

3. Did the lower court abuse its discretion by interpreting the 1998 custody order as requiring Father to pay the cost of the child's transportation from Pennsylvania to Alaska?

4. Did the lower court abuse its discretion by excluding from evidence specific correspondence between counsel that bear[s] on the issue of Father's intent regarding the transportation of the child between Pennsylvania and Alaska, as well as electronic recordings of telephone conversations between the parties?

Father's Brief at 5.

■ ¶ 14 In reviewing contempt orders, we must consider that:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellant court must place great reliance upon the discretion of the trial judge. On appeal from a court' order holding a

---

5. The child's paternal grandmother also filed a custody petition, which the court in its June 11, 2001 order re-listed for hearing at another time. We also note that pursuant to *Flannery v. Iberti*, 763 A.2d 927 (Pa.Super.2000), and *Basham v. Basham*, 713 A.2d 673 (Pa.Super.1998), the June 11, 2001 order refusing to adjudicate a party in contempt of a prior order of court is immediately appealable.

party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion. *Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super.2001) (citations and quotation marks omitted).

¶ 15 We begin our discussion by addressing Father's first two issues. However, because of our disposition of these issues, we will not reach the other two he presents for our review.

■■ ¶ 16 Father recognizes that pursuant to the Domestic Relations Code[6] a party may be held in contempt for willfully failing to comply with a visitation or partial custody order, so long as the procedures outlined in *Crislip v. Harshman*, 243 Pa.Super. 349, 365 A.2d 1260 (1976),[7] are followed. However, with reliance on *Choplosky v. Choplosky*, 400 Pa.Super. 590, 584 A.2d 340 (1990), and *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424 (1988), Father contends that the court may not permanently modify a custody order without having a petition for modification before it. We agree. *See also Rosenberg v. Rosenberg*, 350 Pa.Super. 268, 504 A.2d 350, 353 (1986) ("Willful interference with court ordered visitations, no matter how

deplorable, cannot be made the basis for an 'automatic' change of custody.").

■ ¶ 17 Citing the same case law, Mother does not dispute that a court may not permanently alter custody in the context of a contempt proceeding if a formal petition to modify has not been filed by one of the parties. However, she contends that Father's petition for temporary modification was before the court and, therefore, the court could order the change in custody, as the court did in *Flannery v. Iberti*, 763 A.2d 927 (Pa.Super.2000).[8]

¶ 18 Mother's reliance on *Flannery* is misplaced. In that case both a contempt petition and a modification petition were before the court. Upon finding that the mother repeatedly violated custody orders, the *Flannery* court determined that the best interests of the child were served by a change in custody. We conclude that the situation in *Flannery* is distinguishable from the circumstances presented here. In the instant case, Mother's petition for contempt in no way implicates custody, i.e., she did not request any change in custody. Furthermore, the order to appear received by the parties from the court that scheduled the contempt hearing did not notify

---

**6.** 23 Pa.C.S. § 4346 provides:

**(a) General rule.**—A party who willfully fails to comply with any visitation or partial custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(1) Imprisonment for a period not to exceed six months.

(2) A fine not to exceed $500.

(3) Probation for a period not to exceed six months.

(4) An order for nonrenewal, suspension or denial of operating privilege pursuant to section 4355 (relating to denial or suspension of licenses).

**(b) Condition for release.**—An order committing a person to jail under this section shall specify the condition which, when ful-

filled, will result in the release of the obligor.

**7.** The five elements deemed essential to a civil contempt adjudication are: "(1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication." *Cahalin v. Goodman*, 280 Pa.Super. 228, 421 A.2d 696, 698 (1980).

**8.** Notably, Father's temporary modification petition only requested that the court order that all family contact including contact with Father be prohibited for the period of time suggested by Mentor. The petition did not request changes involving physical or legal custody.

the parties that custody was at issue. Also the record and more particularly the docket do not indicate that Mother's contempt petition and Father's petition for temporary modification were consolidated for any purpose. Moreover, the transcript of the hearing reveals that only the contempt petition was before the court.[9] Finally, the court's order, quoted above and delivered from the bench at the conclusion of the hearing, references only Mother's contempt petition and Father's response thereto. Accordingly, we conclude that only Mother's contempt petition was before the court on March 5, 2001.

 ¶ 19 In addition to the foregoing, we emphasize that Father's due process rights were violated by the actions taken by the court, because Father had no notice that custody would be at issue in the proceedings. "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." *Choplosky,* 584 A.2d at 342. Without notice to the parties that custody was at issue, the trial court could not "assume that the parties ha[d] either sufficiently exposed the relevant facts or properly argued their significance. Consequently neither we nor the trial court can make an informed, yet quintessentially crucial judgment as to whether it was in the best interests of the [child] involved to give sole legal [and physical] custody to the mother." *Id.* at 343.

¶ 20 Having concluded that a modification petition was not before the court at the time of the hearing on Mother's contempt petition and that Father did not have notice that custody would be an issue, we conclude that the court committed a clear abuse of discretion in ordering a change in custody. For these reasons, we vacate the court's orders and reinstate the 1998 custody order.[10]

¶ 21 Orders **VACATED.**

---

**9.** The transcript contains the following discussion between Mother's counsel and the court:

> THE COURT: THIS IS A CONTEMPT PETITION?
> MR. CHACKER: YES, YOUR HONOR.
> THE COURT: AND THERE IS NO OTHER PETITION HERE IN FRONT OF ME?
> MR. CHACKER: NO, YOUR HONOR.

**10.** We recognize that in granting Mother's petition, the court found Father in contempt. However, because no other sanctions were imposed that would require oversight by the lower court, a remand of this matter is unnecessary.