702

**P.H.D., Appellee**

**v.**

**R.R.D., Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 22, 2012.
Filed Nov. 13, 2012.

R.R.D. appellant, pro se.

Mark K. Gubinsky, Bridgeville, for J.D. and R.D., participating parties.

BEFORE: MUSMANNO, BOWES, and WECHT, JJ.

OPINION BY WECHT, J.:

In this case, we are called upon to decide whether, after hearing and denying a contempt petition, a trial court nevertheless retains authority in the same proceeding to grant relief ancillary to that contempt petition. We conclude that it does not.

R.R.D. ["Father"] appeals *pro se* from a March 5, 2012 order dismissing P.H.D. ["Mother"]'s contempt petition. Notwithstanding its decision to deny Mother's contempt petition, the trial court proceeded *sua sponte* to "clarify" its previous child custody order entered on June 28, 2011.[1] No motion for clarification was pending. No motion for modification was pending. Indeed, as we discuss *infra*, in "clarifying" its custody order *sua sponte*, the trial court modified it. This violated Father's due process rights. Accordingly, we vacate the order as it pertains to custody modification.

Father and Mother are the divorced parents of two minor children: J.D., born in March of 1999 and R.D., born in December of 2001 [collectively "Children"]. The parties' custody arrangement has changed several times since their divorce. At the time of the contempt hearing, custody was controlled by the June 28, 2011 and September 20, 2011 orders. In the June 28, 2011 order, the trial court made Father's custody contingent on his completion of therapy. Pending completion, Father was limited to weekly supervised visits. Order, 6/28/11, at 1–2.[2] The trial court's Septem-

---

1. While the trial court indicates that its most recent custody order was the June 28, 2011 order, our review of the record reveals that the most recent custody modification order was actually entered on September 20, 2011, pursuant to Mother's September 13, 2011 "Petition for Special Relief." The September 20, 2011 order added a term to the June 28, 2011 order, which was otherwise still intact and controlling. Accordingly, the June 28, 2011 and September 20, 2011 orders collec-

tively governed the parents' custody arrangement, until those orders were "clarified" by the court's March 5, 2012 order.

2. Father appealed the June 28 order. A panel of this Court affirmed, in an unpublished memorandum. *P.H.D. v. R.R.D.*, 46 A.3d 817 (Pa.Super.2012) (unpublished memorandum), *appeal denied*, —— Pa. ——, 47 A.3d 848 (2012) (per curiam).

ber 20, 2011 order directed Father "to have no contact with the children other than supervised visits." Order, 9/20/11, at 2.

On January 19, 2012, Mother filed a contempt petition, in which she claimed that Father had violated the June 28, 2011 order by initiating unsupervised contact with the Children.[3] No petition for modification or clarification was filed or served. On March 1, 2012, the trial court held a hearing on Mother's contempt petition. Mother testified that Father went to J.D.'s band concert in a school auditorium, sat in the front row, and, during the concert, waved his arms at J.D. while J.D. was performing. Notes of Testimony ["N.T."], 3/1/12, at 18. Mother further testified that, after the performance, Father videotaped Mother and R.D. in the school's hallway. *Id.* at 19. Mother also testified that Father frequently drives past Mother's house. *Id.* at 46.

Father insisted that he had no expectation of seeing Mother or Children at the band concert. *Id.* at 69. He stated that he attended the concerts to network for his business, and that he enjoyed the music. *Id.* at 59–60. Father testified that he did not attempt to speak to Mother or Chil-

dren at the concert, and that Mother was mistaken in believing that he videotaped her. *Id.* at 28. Father, who owns a landscaping business, stated that he has several clients in Mother's neighborhood and that he uses Mother's street as a turnaround, because it is a cul-de-sac. *Id.* at 56–58. Father insisted that he was not attempting to violate the June 28, 2011 custody order. *Id.* at 63–65. He testified that he believed the court order directing him to have "no contact" with Children meant that he was to "not talk to the children. That's what I consider contact." *Id.* at 64.

At the conclusion of the March 1 hearing, the trial court stated that it was "dismissing the contempt petition at this time but ... modifying the [custody] order to clarify it. And what I'm saying in the order from now on is that [Father] is ... not to appear at places where the children would be reasonably expected to be...." *Id.* at 81. The trial court concluded by stating that it would "issue something in the mail." *Id.* at 84.

On March 5, 2012, the trial court issued its order, which was consistent with the rulings it made or forecast on March 1.[4]

---

**3.** Neither the petition, nor the order that ensued, specified whether the species of contempt invoked was civil or criminal in nature. We remind the parties, counsel, and the trial court that this is a distinction with a difference. *See, e.g., Commonwealth v. Moody,* 46 A.3d 765, 771–72 (Pa.Super.2012), *reargument denied* (July 18, 2012) (differentiating civil and criminal contempt). Because it appears to us that the nature of the relief sought was coercive, rather than punitive, and based upon our review of the record, we conclude that the proceeding was civil rather than criminal.

**4.** The trial court's order reads in full:

AND NOW, this 5th day of March, 2012, after hearing, it is hereby ORDERED that the court does not find the defendant to be

in contempt because the order was not clear concerning defendant's contact with the children at school activities, etc.

Notwithstanding the dismissal of the contempt action, the court hereby clarifies the order limiting father's contact to supervised visits to provide that father shall not appear at activities or places where the children would reasonably be expected to be at a particular time. Father is on notice that his failure to comply with the provisions of this order will result in a contempt finding in the future.

As to the issues raised in father's new matter, all are dismissed with the exception that father is entitled to access to records from the children's religious education subject to the clarification concerning contact set forth in this order.

The March 5 order dismissed Mother's contempt petition. The order also "clarified" the court's previous custody orders so as to mandate that Father may "not appear at activities or places where the children would reasonably be expected to be at a particular time." Order, 3/5/12. The order further stated: "Father is on notice that his failure to comply with the provisions of this order will result in a contempt finding in the future." *Id.* Father timely appealed. Mother filed no appeal of the denial of her contempt petition.

 The guardian *ad litem*[5] asserts that we should quash Father's appeal because Father failed to file a statement of errors complained of on appeal with the trial court pursuant to 1925(a)(2)(i) and failed to attach such a statement to his brief pursuant to Pa.R.A.P. 2111(a)(11). Guardian's Brief at 7. We decline to do so. While Pa.R.A.P. 1925(a)(2)(i) and 905(a)(2) require that a statement of errors be filed with the trial court contemporaneously with a notice of appeal in family fast track appeals, the rules do not prescribe a certain consequence in the event of a failure to comply. "[R]ule 905(a)(2) is procedural, not jurisdictional; therefore, we are not divested of our jurisdiction by non-compliance." *In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super.2009). We dismiss appeals for procedural defects sparingly, and will not do so when an appellant has substantially complied with the procedural rules and the opposing party has not been prejudiced. *Id.* (citing *Stout v. Universal Underwriters Ins. Co.*, 491 Pa. 601, 421 A.2d 1047, 1049 (1980)). Such is the case in this *pro se* appeal.

While the guardian *ad litem* alleges that Father did not file a statement of errors with the trial court, our docket contains Father's statement, filed on April 3, 2012, along with a certificate of service indicating that all of the appropriate individuals were served, including the guardian *ad litem.* *See* Statement of Matters Complained of Regarding Appeal of Order on Custody Contempt Dated March 5, 2012, 4/3/12. Father substantially complied with the procedural rules, and the opposing party has not alleged prejudice. Accordingly, we decline to quash or dismiss this *pro se* litigant's appeal.

While Father asserts several issues on this appeal, we need only review Father's claim that he was denied due process. Our resolution of that claim (raised within Father's first issue) is dispositive of this appeal.[6] Specifically, Father argues that the trial court committed an abuse of discretion and/or an error of law by, *inter alia,* modifying the custody order notwithstanding its failure to conduct a modifica-

---

Trial Court Order, 3/5/12.

5. The trial court had appointed the guardian *ad litem* in 2008. Order Appointing Guardian *Ad Litem*, 11/25/08, at 1–2.

6. Father has raised the following issues:
 1) Did the trial court commit an abuse of discretion and/or error of law by denying father due process when it failed to conduct a modification hearing, imposed time limits, refused father to call the children as witnesses, or consider custody factors while modifying the custody order?
 2) Did the trial court commit an abuse of discretion and/or error of law by denying

father's *[sic]* his constitutional rights of free speech and impeding his ability to support his children and himself by imposing limitations on his employment[?]
 3) Did the trial court commit an abuse of discretion and/or error of law when it failed to dismiss the GAL and/or recuse itself while denying father a fair trial?
 4) Did the trial court commit an abuse of discretion and/or error of law when it failed to hold mother in contempt for violating statutory rights to the children's education information and failing to take the children to counseling?

Appellant's Brief at 1 ("suggested answers" and erroneous spaces omitted).

tion hearing. Father's Brief at 1. We are constrained to agree.

■ The trial court had before it Mother's contempt petition alone. The subject of this appeal is the order dismissing that petition. Our scope and standard of review are familiar: "In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *Flannery v. Iberti,* 763 A.2d 927, 929 (Pa.Super.2000) (citations omitted).[7]

■ In resolving Father's issue, we are required to determine whether the trial court's March 5, 2012 order modified the previous custody arrangement or merely "clarified" it. *See* T.C.O. at 2 ("I found that Father was not in contempt of that custody order, but I did clarify the order. . . ."). We have expressly held that a trial court "may not permanently modify a custody order without having a petition for modification before it." *Langendorfer v. Spearman,* 797 A.2d 303, 308 (Pa.Super.2002). Neither party filed a petition for modification. The trial court asserts that it "clarified," but did not modify, the custody order. We disagree.

While many of our cases have discussed instances in which a custody modification is necessary, there is a dearth of authority specifying what constitutes a modification. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). Further, "when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: . . . other statutes upon the same or similar subjects." 1 Pa.C.S.A. § 1921(c)(5). In the Uniform Child Custody Jurisdiction and Enforcement Act ["UCCJEA"], 23 Pa.C.S.A. §§ 5401–5482, our General Assembly has provided a definition of modification. Even though this is not a UCCJEA case, we may, in the absence of other governing authority, afford that definition persuasive value. *See* 1 Pa.C.S.A. § 1921(c)(5). The UCCJEA defines modification as "[a] child custody determination that changes, replaces, supersedes or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." 23 Pa.C.S.A. § 5402.

The June 28, 2011 and September 20, 2011 custody orders collectively provided that Father was permitted supervised visits upon completion of therapy, but was to have no contact with Children outside of those visits. The March 5, 2012 order provided that, on explicit pain of pre-adjudicated contempt, Father "shall not appear at activities or places where the children would reasonably be expected to be at a particular time." Order, 3/5/12 ("failure to comply will result in a contempt finding")

---

**7.** To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Stahl v. Redcay,* 897 A.2d 478, 489 (Pa.Super.2006). Had the previous orders included the requirement that Father not be in

places where he would reasonably expect his children to be, he would have had notice that going to the band concert might well be a violation of the custody order. Father's attendance would have been volitional. A finding of contempt would have been conditioned on the trial court's finding as to Father's intent. Of course, as we discuss *infra,* such an adjudication would suffer from other infirmities.

(emphasis added). This March 5, 2012 order unquestionably imposed new and severe restrictions on Father, and therefore modified the earlier custody orders. Father is now required proactively to alter his daily life and to constantly monitor his movements so as to avoid ever being wherever the children may happen to be at any and all times in the community at large. Would this include a Pittsburgh Steelers game? A popular shopping mall or store or restaurant? An amusement park?

It cannot be gainsaid that these purported no-go zones were not contained in the previous custody arrangement, which was already highly restrictive. Under the trial court's new "clarification," Father is no longer permitted to attend school activities, community activities that Children will likely attend, or even restaurants and stores that Children might visit. This is a significant departure from the previous order that limited Father's time spent with Children to supervised visits. Most important, the parties were not on notice that such a breathtaking set of restrictions was sought, nor that it could be ordered, particularly in a scenario where the contempt petition is itself *denied.*

The trial court not only modified the custody order. It did so without any modification petition. It did so without notice and a hearing tailored specifically to custody modification. It denied Father his due process rights. Our decision in *Langendorfer* is instructive. In that case, the mother filed a contempt petition alleging that the father willfully violated the custody order. *Langendorfer,* 797 A.2d at 305–06. In a subsequent order, the trial court found the father in contempt, granted the mother sole legal and primary physical custody, and restricted the father's visitation with the children to supervised visits. *Id.* at 306–07. We found that the father's due process rights were violated because

he had no notice that custody was at issue. *Id.* at 309.

Our words in *Langendorfer* bear reproducing at length here:

> In the instant case, Mother's petition for contempt in no way implicates custody, i.e., she did not request any change in custody. Furthermore, the order to appear received by the parties from the court that scheduled the contempt hearing did not notify the parties that custody was at issue. Also the record and more particularly the docket do not indicate that Mother's contempt petition and Father's petition for temporary modification were consolidated for any purpose. Moreover, the transcript of the hearing reveals that only the contempt petition was before the court. Finally, the court's order, quoted above and delivered from the bench at the conclusion of the hearing, references only Mother's contempt petition and Father's response thereto. Accordingly, we conclude that only Mother's contempt petition was before the court on March 5, 2001.
>
> In addition to the foregoing, we emphasize that Father's due process rights were violated by the actions taken by the court, because Father had no notice that custody would be at issue in the proceedings. "Notice, in our adversarial process, ensures that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." [*Choplosky v. Choplosky,* 400 Pa.Super. 590, 584 A.2d 340, 342 (1990).] Without notice to the parties that custody was at issue, the trial court could not "assume that the parties ha[d] either sufficiently exposed the relevant facts or properly argued their significance. Consequently neither we nor the trial court can make

**708**

an informed, yet quintessentially crucial judgment as to whether it was in the best interests of the [child] involved to give sole legal [and physical] custody to the mother." *Id.* at 343.

Having concluded that a modification petition was not before the court at the time of the hearing on Mother's contempt petition and that Father did not have notice that custody would be an issue, we conclude that the court committed a clear abuse of discretion in ordering a change in custody.

*Id.* at 308–09 (footnotes omitted).

As in *Langendorfer,* Father here had no notice that custody was at issue. Neither the contempt petition nor the notice and order to appear held out the prospect of custody modification. *See* Petition for Contempt of Child Custody Order of Court and Request for Other Relief, 1/12/11; Contempt Hearing Notice, 1/19/12. Father was unaware that custody was at issue, and therefore had no opportunity to prepare for a modification hearing.

Indeed, the facts here are more egregious than in *Langendorfer,* where the trial court did find the father in contempt.[8] Here, by contrast, the trial court expressly dismissed the contempt petition. Under such circumstances, it is of course impossible even to advance the argument (rejected in any event by *Langendorfer*) that the modifications were ancillary to a contempt adjudication. Had the trial court found Father in contempt of its custody order, it would have had jurisdiction to enforce that order. Even then, it would have lacked

authority to modify it. Once the contempt petition was dismissed, and inasmuch as no motion for modification was filed, the trial court had nothing else on its plate. No ancillary relief could be granted.

The trial court abused its discretion in altering the terms of custody when a petition requesting such relief was not before it. Once the trial court dismissed the contempt petition, it had no authority to rule on modification, which was not before it at the time. The custody court does not possess some ongoing, continuous supervisory role over the life of a family, however broken that family may be. Rather, the court's jurisdiction is triggered only when invoked, and then only upon proper petition and notice.

We vacate the trial court's March 5, 2012 order as it purports to relate to custody modification, albeit under the label of "clarification." Specifically, we vacate the second paragraph of the court's order. If one of the parties seeks to modify the custody arrangement, that party must petition the court accordingly. Thereafter, if the court schedules a hearing on the modification petition, the opposing party is on notice that custody modification will be at issue, in fact and in law.

Order vacated in part, as set forth hereinabove. Jurisdiction relinquished.

---

8. Had the trial court found Father in contempt, it could have ordered ancillary relief in the form of sanctions:

> Sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the

contemnor's noncompliance with a court order.

*Rhoades v. Pryce,* 874 A.2d 148, 151–52 (Pa.Super.2005) (citation omitted). Such compensatory sanctions have included attorney's fees, investigation costs, deposition fees, subpoena fees, witness fees, or fines to compensate an aggrieved party. *Id.*