J-A05013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| G.R., JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.R., | |
| Appellant | No. 1810 EDA 2015 |

Appeal from the Order entered May 11, 2015,
in the Court of Common Pleas of Bucks County,
Civil Division, at No(s): 2012-60482

BEFORE:  OLSON and OTT, JJ., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 13, 2016**

K.R., n/k/a K.K., ("Mother") appeals from the order entered on May 11, 2015, denying her petition to hold G.R., Jr. ("Father") in contempt of the trial court's custody order dated August 19, 2013.  We affirm.

In its opinion entered on August 7, 2015, the trial court set forth the factual background and procedural history of this appeal.  We incorporate the relevant portions of the background and history into this memorandum as follows:

> . . . The parties were married [in July of 2011], separated [in February of 2012] and divorced [in June of 2013].  Their only child, [C.R. or "Child"], was born [in March of 2012], after the parties separated.  Father currently works as a waste water systems operator in Pipersville, Pennsylvania from 7 a.m. to 3 p.m. or 8 a.m. to 4 p.m. and earns between $50,000 and $60,000 per year.  He was formally a school teacher.  He is also

---

* Former Justice specially assigned to the Superior Court.

an Assistant Football Coach at [a local university]. Mother is a Middle School Teacher [in a local school district] and earns $68,000 per year. Father lives with his fiancé in Chalfont, Bucks County, Pennsylvania[,] and Mother lives with her parents in Solebury Township, Bucks County, Pennsylvania.

The current agreed [c]ustody [o]rder was entered by [] Judge Alan Rubenstein [], on August 19, 2013 as follows:

1. Parents have joint legal custody.

2. Mother has primary physical custody.

3. Beginning October 1, 2013 Father shall have partial physical custody every other weekend from Friday at 5 p.m. until Sunday at 5 p.m. and a dinner visit every Wednesday from 3 p.m. to 7 p.m. and a Monday visit from 3 p.m. to 7 p.m. following non- visitation weekends. Beginning November 1, 2013, Father shall have in addition to the every other weekend, every Monday from 3 p.m. until 7 p.m. and every Wednesday over night from 5 p.m. until Thursday at 5 p.m.

There are two additional provisions of [the] August 19, 2013 [o]rder which Mother claim[ed] Father violated by coaching football at times when he had custody of [Child]. They are as follows:

Right of first refusal

Non-custodial parent shall be notified as early as possible and afforded the right of first refusal of physical custody of the child in all circumstances where the custodial parent is not supervising the child for a period of 4 hours or more. If either parent is unavailable to provide care under the right of first refusal, the party with physical custody has the right to choose an alternate provider.

Weekly update

Each party shall provide a weekly written summary regarding all issues pertaining to [Child] including but not limited to his eating and sleeping habits, medical issues, etc.

On September 26, 2014, Mother filed a [p]etition for [c]ontempt, and [she filed] a subsequent [a]ddendum to that [p]etition on May 5, 2015, alleging that Father was in contempt of the [c]ustody [o]rder due to his activities as an assistant [university] football coach which resulted in his failure to "strictly comply" with the terms of that [o]rder. She therefore requested that [the trial court] reduce the amount of time Father had physical custody of [Child], and she also requested an award of sanctions and attorneys' fees.

At the hearing on May 11, 2015, Mother, through counsel, called Father, who was *pro se*, as of [sic] cross-examination on the issues of the time he spent with [Child] during the 2013 and 2014 [university] football seasons, the time he spent coaching, and what information he put in the weekly updates for the days he was coaching. Mother also called her father as a witness, who testified that he took pictures of Father at [the university] football practices and games on various dates. Mother then testified as to her understanding of the [r]ight of [f]irst [r]efusal and [w]eekly [u]pdate provisions of the [c]ustody [o]rder. Finally, Father's mother testified regarding her involvement with Father and [Child] on game days.

[…] After the hearing [the trial court] determined that Father did not willfully violate the terms of the [c]ustody [o]rder and . . . entered an [o]rder denying the [c]ontempt [p]etition [on May 11, 2015].

Trial Court Opinion, 8/7/2015, at 1-3 (record citation omitted).

On June 9, 2015, Mother filed a notice of appeal from the order, but failed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(ii). On June 19, 2015, the trial court filed an opinion suggesting that this Court should dismiss the appeal based on Mother's failure to file a concise statement in this Children's Fast Track appeal. The trial court did not enter an order directing Mother to file a concise statement. On June 29, 2015, this Court, acting *sua sponte*, entered

an order directing Mother to file a concise statement by July 9, 2015, or face waiver of all issues and dismissal of the appeal without further notice. Order, 6/29/2015 *citing* **Mudge v. Mudge**, 6 A.3d 1031 (Pa. Super. 2011), and **J.M.R. v. J.M.**, 1 A.3d 902 (Pa. Super. 2010). On July 9, 2015, Mother filed her concise statement. On August 7, 2015, the trial court subsequently filed a supplemental opinion pursuant to Pa.R.A.P. 1925(a) addressing the merits of issues presented in Mother's concise statement.[1]

In her brief on appeal, Mother raised the following issues:

1. Did the [l]ower [c]ourt err – after noting it believed Father had lied – by finding that Father was not in contempt for violating the four-hour "right of first refusal of physical custody" paragraph in the [c]ustody [o]rder despite clear and irrefutable evidence that Father was always coaching football while he was supposed to be supervising the parties' son[?]

2. Did the [l]ower [c]ourt err by finding that Father was not in contempt for violating the required "weekly updates" paragraph in the [c]ustody [o]rder despite uncontroverted evidence that Father had lied and attempted to deceive . . . [Mother] in a number of his weekly updates by, inter alia, falsely claiming personal, physical interaction with the parties' son when in fact, Father was not present and away coaching football[?]

---

[1] Since the trial court did not order Mother to file a concise statement, Mother subsequently complied with this Court's order to file a concise statement, and Father does not assert prejudice from Mother's late filed concise statement, we do not find her issues waived. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that there is no *per se* rule mandating quashal or dismissal of a defective notice of appeal in children's fast track cases); **cf. J.P. v. S.P.**, 991 A.2d 904 (Pa. Super. 2010) (holding that an appellant waives all issues by failing to timely comply with the trial court's direct order to file a concise statement); **J.M.R. v. J.M.**, 1 A.3d 902 (holding that the appellant waived all issues for failing to file a concise statement in compliance with an order of this Court).

- 4 -

3. Did the [l]ower [c]ourt err by asserting this matter was a Children's Fast Track Appeal when, by definition and court precedent, this is merely an appeal of an [o]rder denying a [p]etition for [c]ontempt and, therefore, not a Children's Fast Track Appeal[?]

Mother's Brief, at 2.[2]

This Court set forth our scope and standard of review as follows:

In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.

To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 (Pa. Super. 2012) (quotation and citation omitted).

Additionally, we stated:

When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. To be in contempt, a party must have violated a court [o]rder, and the complaining party must satisfy that burden by a preponderance of the evidence.

\* \* \*

---

[2] We agree with the trial court's suggestion that Mother's third issue is moot, as she complied with this Court's order directing her to file a concise statement. ***See*** Trial Court Opinion, 8/7/2015, at 3-4 n.1. Thus, we will not address it further in this memorandum.

> In ***Langendorfer [v. Spearman]***, 797 A.2d 303 (Pa. Super. 2002), this Court stated that a party may be held in contempt for willfully failing to comply with a visitation or partial custody order [. . .].
>
> Further, with regard to contempt orders, this Court has stated:
>
>> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute. When reviewing an appeal from a contempt order, the [appellate] court must place great reliance upon the discretion of the trial judge. On appeal from a court order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

***Harcar v. Harcar***, 982 A.2d 1230, 1234-1235 (Pa. Super. 2009) (some quotations and citations omitted).

Although not set forth as an issue in the statement of questions involved portion of her brief, Mother first argues that Judge Susan Devlin Scott, the trial court judge who ruled on the contempt petition, violated the coordinate jurisdiction doctrine by unilaterally overruling the need for compliance with mandatory provisions included in the existing custody order issued by Judge Rubenstein on August 19, 2013. Mother's Brief, at 10-11. Mother waived any issue regarding the coordinate jurisdiction rule by failing to raise it in her concise statement and statement of questions involved in her brief. ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues

that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in a brief on appeal).

Next, Mother asserts that Judge Scott abused her discretion by failing to find Father in contempt given the uncontroverted evidence that Father violated Judge Rubenstein's four-hour rule and repeatedly lied in the weekly summaries also required by Judge Rubenstein's August 19, 2013 custody order.

As we explained in **Harcar**, "[e]ach court is the exclusive judge of contempts against its process." **Harcar**, 982 A.2d at 1235. Moreover, "[t]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." **Id.** at 1236 (quotation omitted). Here, the trial court determined "Mother was unable to produce any evidence of record that specifically revealed that Father had agreed not to coach football or was prohibited from coaching footfall while he had custody of [Child]." Trial Court Opinion, 8/7/2015, at 6. The trial court further determined that there were no periods exceeding four hours wherein Father was not supervising the Child, because other family members brought Child to the football games and Father had contact with Child before and after the games and during halftime. **Id.** at 7. Moreover, the trial court noted that Father provided Mother with over 90 weekly updates pursuant to the custody order and Mother only identified three insignificant discrepancies.

*Id.* at 8-10.  The trial court concluded that the alleged discrepancies were not strictly prohibited by the custody order, *de minimus* in nature, and did not warrant a finding of contempt.  *Id.* at 10.  As we find that the record supports the trial court's credibility assessment, we will not disturb the trial court's decision that Father has not acted in contempt of the trial court's August 19, 2013 custody order.  We, therefore, affirm the trial court's order denying Mother's petition to find Father in contempt.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2016