J. S17040/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

N.D.J.                              :      IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                    v.              :
                                    :
D.E.J.,                             :          No. 1976 MDA 2019
                                    :
              Appellant             :


Appeal from the Order Entered December 2, 2019,
in the Court of Common Pleas of York County
Civil Division at No. 2015-FC-001144-03


BEFORE:  PANELLA, P.J., STABILE, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:                **FILED MAY 19, 2020**

D.E.J. ("Mother") appeals **pro se** from the December 2, 2019 order of adjudication of contempt of Mother and finding of no contempt of N.D.J. ("Father") entered in the Court of Common Pleas of York County ("Contempt Order").  We affirm.

The record reflects that Father initiated the underlying custody action when he filed an action in divorce and custody against Mother on June 23, 2015.  The custody action concerns the parties' children, A.D.J., born in February 2010; R.L.J., born in January 2012; and L.N.J., born in May 2014 (collectively, the "Children").  Since Father's initiation of the underlying custody action, the parties have filed numerous petitions that eventually resulted in the entry of a final custody order on September 5, 2019 ("Custody Order") wherein the trial court awarded shared legal custody of the

Children to Mother and Father and primary physical custody of the Children to Father. We note that following entry of the Custody Order, Mother and Father filed timely appeals of that order. This court consolidated Mother's and Father's cross-appeals of the Custody Order at Nos. 1609 MDA 2019 and 1629 MDA 2019.

As it relates to this appeal, on October 15, 2019, Mother filed a petition for contempt against Father, alleging that Father

> willfully failed to obey the [Custody O]rder in that: Father was ordered to arrange and begin the [C]hildren with a new counselor within 30 days of the [Custody O]rder, and he has not done so. Father was ordered to ensure prior to selecting a proposed counselor, the practice accepts the [C]hildren's insurance and would be able to establish an appointment within 30 days.

Mother's "petition for contempt of custody," 10/15/19 at 1, ¶ 5.

Father filed an answer to petition for contempt that included a "counter petition for contempt and modification." (Father's answer to petition for contempt, 10/29/19 at 3[1] (full capitalization omitted).) In his counter-petition for contempt, Father set forth the following:

> 9. In the Opinion entered by the [trial c]ourt in Support of its [Custody Order,] the trial court indicated:
>
> > "Credible testimony from the [Children's] therapist illustrates that [M]other engaged in a course of

---

[1] We note that Father's answer to petition for contempt is devoid of page numbers. For ease of reference, we have assigned page numbers to the answer.

conduct to undermine the therapeutic relationship and failed to cooperate with therapy. Mother discussed [A.D.J.'s and R.L.J.'s] past sexual conduct in their presence despite the therapist's admonishment that [M]other should desist, which was corroborated by [F]ather. When the therapist did not agree with [M]other's opinions, [M]other's conduct became so antagonistic [that M]other was banned from the therapist's practice. As a result, the therapist is no longer able to maintain a positive therapeutic relationship with the entire family and believes the [C]hildren should engage with a new therapist. This conduct is in direct violation of the prior order."

10. As per the [Custody O]rder, and with the assistance of the [C]hildren's prior counselor, Laura Frie, Father had identified Betsy Craft and Andrew Rupert of the Center for Creative Arts and Play Therapy as appropriate therapists for the [C]hildren and did so in a timely fashion by scheduling their first appointment for October 3, 2019.

11. It is averred that when Father notified Mother on September 18, 2019 of his selection of the therapists, Mother began to engage in a campaign to contact the above referenced therapists and their practice incessantly in an effort to impart her continuing irrational "concerns" with regard to the [C]hildren having been sexually abused or physically abused by Father and/or Father's family.

12. It is averred that a new allegation of abuse against Father (the 8th in two years) was lodged with York County Children Youth and Families on or about September 17, 2019.

13.    Father provided notification to Ms. Craft and Mr. Rupert of the newest allegations.

14.    It is believed that the [C]hildren's former therapist, Laura Frie, also communicated with Betsy Craft prior to the [C]hildren's first scheduled appointment.

15.    It is averred that as a result of Mother's past behaviors with Ms. Frie, combined with the latest allegation of abuse, combined with Mother's harassing contact of the Craft/Rupert offices in the weeks prior to the scheduled appointment, that the Center for Creative Arts and Play Therapy declined the [C]hildren as they did not wish to be enmeshed with Mother's continuing campaign of false allegations of sexual and physical abuse against Father.

. . . .

17.    Father has significant concerns that Mother will do everything in her power to undermine any selection of the [C]hildren's counselors who are not of her liking, and specifically who do not have as their focus "sexual abuse" and/or "sexual trauma."

18.    Father avers that Mother's behaviors as delineated with more specificity above are in willful contempt of the [Custody Order] for which he deserves to be reimbursed for his counsel fees and costs.

*Id.* at 3-5.  In addition to these averments, Father identified Mother's "refusal to allow the [C]hildren to participate in extracurricular activities as a willful violation of the [Custody Order."]  *Id.* at 5, ¶ 25.

On November 22, 2019, the trial court held a contempt hearing.  At the conclusion of the hearing, the trial court found that Mother's allegations of

contempt against Father were unfounded. (Notes of testimony, 11/22/19 at 98-99.) The trial court then found Mother in contempt of court for unreasonably withholding her consent to permit the Children to participate in extracurricular activities. (*Id.* at 98-100.) The trial court took sanctions against Mother under advisement. (*Id.* at 100-102.) On December 5, 2019, the trial court entered the Contempt Order. In that order, the trial court noted that "[p]rior sanctions have been unsuccessful in encouraging Mother to comply with [o]rders of [the trial c]ourt." (Contempt Order at 6-7.) The trial court imposed sanctions of seven days of incarceration at York County Prison, but suspended the sanctions

> conditioned on [Mother's] cooperation with the co-parent counseling[2] and compliance with any recommendations made by the co-parent counselor. In the event that Mother fails to appear for scheduled sessions, engages in behaviors that obstruct the co-parent counseling, or fails to comply with recommendations, upon motion and sufficient evidence, Father may petition for the [trial c]ourt to issue a Rule upon Mother to show cause why the sentence should not be imposed. Mother is on notice that incarceration will be imposed for noncompliance.

---

[2] The trial court noted that it had "repeatedly directed" that Mother and Father participate in co-parenting counseling. (Contempt Order at 7.) The trial court further noted that it had first ordered co-parent counseling in its July 24, 2018 custody order and that neither party complied. (*Id.*) The trial court again ordered co-parent counseling in the Custody Order. (*Id.*) The trial court noted that although Mother and Father are appealing portions of the Custody Order, the requirement for co-parenting counseling is not an issue on appeal. (*Id.*) The trial court then noted that Father reported that co-parenting counseling was scheduled to begin on or about December 5, 2019. (*Id.*)

*Id.* at 7-8. The trial court also found "it necessary to appoint a parent coordinator" pursuant to Pa.R.Civ.P. 1915.11-1. (*Id.* at 8.) The trial court stated that the "appointment of a parenting coordinator shall be made by separate order with the initial responsibility of cost of the parent coordinator being assessed at 75% to Mother and 25% to Father." (*Id.*)

Mother filed a timely notice of appeal, together with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court then filed its Rule 1925(a)(2)(ii) opinion.

Mother raises the following issues:

1. Did the trial court commit an abuse of discretion in finding Mother in civil contempt and ordering sanctions, including incarceration with a vague purge condition?

   a) Did the trial court commit an abuse of discretion in finding that Mother and Father had come to an "agreement" regarding extracurricular activities when Mother believed they were still in negotiations?

   b) Did the trial court commit an abuse of discretion in finding that Mother unreasonably withdrew any agreement that may or may not have been reached?

   c) Did the trial court commit an abuse of discretion for issuing a vague purge condition for the contempt?

2. Did the trial court commit an abuse of discretion in failing to find Father in contempt of court for failing to enroll the children in counseling within the period required?

3. Did the trial court commit an error of law or an abuse of discretion in modifying a provision of an order that is currently under appeal?

4. Did the trial court commit an abuse of discretion in ordering an unequal contribution of the parties for payment of the parenting coordinator?

5. Did the trial court commit an abuse of discretion in failing to admit or consider exhibits that were submitted into evidence and not objected to?

Mother's brief at 2-3.

At the outset, we note that after the filing of an appeal, a lower court generally loses jurisdiction to proceed further in a matter. Pa.R.A.P. 1701(a); *see also In re J.A.*, 107 A.3d 799, 809 (Pa.Super. 2015). Rule 1701(c), however, provides that "[w]here only a particular item, claim or assessment adjudged in the matter is involved in the appeal, . . . the appeal . . . shall operate to prevent the trial court . . . from proceeding further with only such item, claim or assessment," unless the lower court or this court otherwise orders. Pa.R.A.P. 1701(c); *see also In re J.A.*, 107 A.3d at 809.

Here, when the trial court held the contempt hearing and entered the Contempt Order, Mother's and Father's cross-appeals of the Custody Order were pending before this court. Mother's pending appeal raised claims of error and abuses of discretion with respect to the trial court's application of certain of the rules of civil procedure; the trial court's permitting Father to choose a new therapist for the Children; the trial court's failure to adequately safeguard

the Children; the trial court's finding of Mother in contempt of its July 24, 2018 custody order; and the trial court's analysis of the 23 Pa.C.S.A. § 5328(a) factors to consider when awarding custody. Father's pending appeal only challenged the trial court's denial of his relocation request.

In her petition for contempt of the Custody Order, Mother alleged that Father was in contempt because he failed to have the Children seen by a therapist within 30 days. (Mother's "petition for contempt of custody," 10/15/19 at 1, ¶ 5.) In Father's counter-petition for contempt, Father alleged that Mother interfered with his arranging for the Children to be seen by a therapist[3] and identified "Mother's refusal to allow the [C]hildren to participate in extracurricular activities as a willful violation of the [Custody Order]." (Father's counter-petition for contempt and modification, 10/29/19 at unnumbered pp. 3-6, ¶¶ 9-18, 25.) Because the claims raised in the pending appeals of the Custody Order were not relevant to or at issue in the contempt proceeding, the trial court retained jurisdiction over the issues relating to the parties' petitions for contempt.

> Appellate review of a contempt order is limited to determining whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

---

[3] We note that the trial court determined that Father's contention that Mother violated the Custody Order by interfering with his scheduling of the Children's new therapist was "unfounded." (Notes of testimony, 11/22/19 at 99.)

**N.A.M. v. M.P.W.**, 168 A.3d 256, 261 (Pa.Super. 2017) (internal citations

and quotation marks omitted).

> Each court is the exclusive judge of contempts against
> its process. The contempt power is essential to the
> preservation of the court's authority and prevents the
> administration of justice from falling into disrepute.
> When reviewing an appeal from a contempt order, the
> appellate court must place great reliance upon the
> discretion of the trial judge.

**Langendorfer v. Spearman**, 797 A.2d 303, 307 (Pa.Super. 2002).

Moreover, this court "defers to the credibility determinations of the trial court

with regard to the witnesses who appeared before it, as that court has had

the opportunity to observe their demeanor." **Harcar v. Harcar**, 982 A.2d

1230, 1236 (Pa.Super. 2009) (citations omitted).

> It is established[ that t]o be in contempt, a party must
> have violated a court [o]rder, and the complaining
> party must satisfy that burden by a preponderance of
> the evidence.  Specifically, the complainant must
> prove certain distinct elements[:]   (1) that the
> contemnor had notice of the specific order or decree
> which he is alleged to have disobeyed; (2) that the act
> constituting the contemnor's violation was volitional;
> and (3) that the contemnor acted with wrongful
> intent.

**J.M. v. K.W.**, 164 A.3d 1260, 164 (Pa.Super. 2017) (**en banc**) (internal

citations and quotation marks omitted; some brackets in original).

Mother first complains that the trial court abused its discretion in finding

her in contempt.  In this issue, Mother includes three sub-issues in her brief.

Mother's first and second sub-issues are interrelated.  In those, Mother claims

that the trial court abused its discretion in finding that her withholding of consent to permit the Children to participate in extracurricular activities was unreasonable. Mother claims that even though she initially agreed to permit the Children to participate in extracurricular activities in exchange for Father's agreement to adjust her periods of custody, her subsequent withholding of consent was not unreasonable because the parties were engaged in ongoing negotiations. (Mother's brief at 12-14.) According to Mother, because she and Father had not agreed to all of the terms of their agreement, "[it] was clearly an abuse of discretion for the trial court to find an agreement to all terms had occurred . . . ." (*Id.* at 13-14.) Mother then discusses three-day contract cancellation rights, unjust enrichment, and promissory estoppel. (*Id.* at 16.) Mother's argument entirely misses the mark. This appeal concerns a contempt finding, not a contract dispute. Because Mother has failed to develop a relevant legal argument and cite to relevant authority, Mother waives her first and second sub-issues on appeal. *See* Pa.R.A.P. 2119(a) (an appellate brief must contain "discussion and citation of authorities" to each issued raised); *see also Butler v. Illes*, 747 A.2d 943, 944 (Pa.Super. 2000) ("When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, [this] court will not consider the merits thereof." (citations omitted)).[4]

---

[4] We note that Mother's *pro se* status does not relieve her of her duty to properly raise and develop appealable claims. *Smathers v. Smathers*, 670 A.2d 1159, 1160 (Pa.Super. 1996).

Notwithstanding waiver, we note that in finding Mother in contempt, the trial court determined, as follows:

> It is clear that [Mother] did consent provided [that Father] adjusted the schedule, which he agreed to. Then she unreasonably withheld consent with other conditions related to an irrelevant area of the [Custody] Order to the extracurriculars because [Father] had already agreed to abide by the [Custody] Order and make the counseling a priority. So [the trial court does] find that [Mother] is in willful violation of the [Custody O]rder.
>
> As [Mother] started, she outlined what the conditions are for making a finding of contempt, that there was a clear order, and that the violation was willful. It is clear that after agreeing to the extracurriculars provided the conditions were held, and after [Father] agreed to her conditions, then she wanted to add more conditions to the consent. [The trial court] find[s] that unreasonable.

Notes of testimony, 11/22/19 at 99-100.

Even if Mother had not waived her first and second sub-issues on appeal, our thorough review of the record demonstrates that the trial court properly exercised its discretion.

In her final sub-issue of issue one, Mother complains that the trial court abused its discretion in imposing a vague purge condition. Mother did not raise this issue in her Rule 1925(a)(2)(i) statement and, therefore, waives it on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) (stating that issues not included in the concise statement are waived).

In her second issue, Mother claims that the trial court abused its discretion when it did not find Father in contempt for failing to enroll the

Children in counseling within 30 days of the Custody Order. In her argument on this issue, Mother concedes that Father had appointments for the Children set for October 3, 2019, which was within the 30-day period provided in the Custody Order. (Mother's brief at 22.) Mother also concedes that the practice cancelled the appointments on October 2, 2019. (*Id.*) Mother's complaint is that "Father's refusal to have the [C]hildren evaluated by a practice that specializes in experiences these [C]hildren have had is clearly with wrongful intent . . . ." (*Id.* at 23-24.) Mother identifies the experiences as sexual in nature. (*Id.* at 24.) Mother then requests that this court remand "the case to the trial court with instructions to order the [C]hildren into therapy that is qualified to meet their needs . . . ." (*Id.*) Clearly, Mother is unhappy that Father will not enroll the Children in the type of therapy that Mother believes that Father should enroll them in. Indeed, Mother requests that we remand this case "with instructions to order the [C]hildren into therapy that is qualified to meet their needs[.]" (*Id.*)

In finding that Father was not in contempt, the trial court first determined that Father's evidence was credible. (Contempt Order at 2.) The trial court then concluded that

> Mother has failed to support her claim that Father did not timely schedule the counseling session pursuant to the [Custody O]rder. Father provided sufficient evidence to show that on September 18, 2019 he did timely arrange for counseling to begin for [A.D.J.] and [R.L.J.] on October 3, 2019 which was within thirty (30) days of the [Custody] Order and for which Mother was provided timely notice. Father was not notified

that the counselor would be unable to provide services until the eve of the appointment deadline. Upon receipt of notification that the counselor was unwilling to provide counseling services to the [C]hildren, Father took immediate remedial action to secure an appointment with a qualified and appropriate counselor, utilizing the recommendations by the professionals referred by the initial counselor. Father has sole legal custody as it relates to enrolling the [C]hildren into counselling and, therefore, has the exclusive right to consent to the counseling treatment for the [C]hildren. The [trial c]ourt finds that, although the counseling session did not occur within thirty (30) days, Father did not willfully violate the Custody Order.

*Id.* 2-3. We have thoroughly reviewed the record. We find no abuse of discretion.

Mother next complains that "the trial court commit[ed] an error of law or an abuse of discretion in modifying a provision of [the Custody O]rder that is currently under appeal." (Mother's brief at 24.)

At the outset, and as discussed above, the trial court had jurisdiction to conduct the contempt hearing pursuant to Pa.R.Civ.P. 1701. As Mother suggests, however, a contempt proceeding cannot be converted into a custody modification proceeding without proper notice and due process. (***See*** Mother's brief at 25-27; ***see also G.A. v. D.L.***, 72 A.3d 264, 270 (Pa.Super. 2013) (concluding that trial court abused its discretion where it modified custody by reinstating previous order notwithstanding that father, in his contempt petition, never sought modification).)

Here, in its Custody Order, the trial court directed that "Father shall have sole legal custody for the purpose of enrolling the Children with a new counseling practice" which included the "exclusive right to consent to counseling treatment for the Children." (Custody Order at 2.) In the Contempt Order, the trial court directed that:

> [f]or clarification purposes and without the need to modify the Custody Order, the [trial c]ourt orders and directs that Father shall notify the counselor for each child that he has the exclusive right to consent to the treatment of the [C]hildren. Despite this right, both parents shall cooperate with the counseling sessions by ensuring that the [C]hildren attend for the frequency and duration as recommended by the child's counselor. Mother shall have the right to verbally communicate with the counselor so long as such communication is initiated by the counselor or occurs at the specific request of the counselor. Otherwise, communication shall be in writing with a copy of any such communication to Father. Any communication by Mother to the counselor shall be relevant to the counselor's treatment plan as it is determined by the counselor, shall not be excessive in length or frequency, and shall not be disruptive to the sessions or treatment as a whole. Father shall ensure that the counselor treating each child has contact information for Mother and Laura Frie to enquire at his/her option, of any treatment needs of the subject child.

Contempt Order at 3.

To support her contention that the trial court improperly modified custody, Mother relies on *P.H.D. v. R.R.D.*, 56 A.3d 702 (Pa.Super 2012). There, mother filed a contempt petition alleging that father had violated a provision of the custody order that directed that father "have no contact with

- 14 -

the children other than supervised visits" when father appeared at one of the children's band concerts. *Id.* at 704. At the contempt hearing, the trial court "clarified" the custody order by explaining that father was "not to appear at places where the children would reasonably be expected to be." *Id.* Father appealed, claiming that the trial court abused its discretion and/or erred as a matter of law by modifying the custody order without a modification hearing. *Id.* at 705-706. This court determined that the trial court's "clarification" was a modification of the custody order because it imposed new restrictions on father's custody such as prohibiting him from attending school and community activities that the children were likely to attend. *Id.* at 706-707. Accordingly, this court vacated that part of the contempt order that purported to relate to a custody modification, but was labeled as a "clarification," because father had no notice that custody would be an issue at the contempt hearing which violated his due process rights. *Id.* at 707-708.

Here, and unlike *P.H.D.*, custody was not at issue in the contempt proceeding. Father had already been awarded sole legal custody for the purpose of enrolling the Children in counseling, as well as the exclusive right to consent to treatment. The Contempt Order's clarification only concerned the manner in which Mother must communicate with the Children's therapist – not the manner in which Mother must communicate with the Children. The contempt order in no way deprived Mother of her right to share in "making decisions of importance in the life of [the] Children, including educational,

medical, and religious decisions." (Custody Order, 9/5/19 at 2; ***see also*** 23 Pa.C.S.A. § 5322 (defining legal custody). Therefore, this issue lacks merit.

In her fourth issue, Mother complains that the trial court abused its discretion "in ordering an unequal contribution of the parties for payment of the parenting coordinator." (Mother's brief at 27.)

In its Contempt Order, the trial court found it necessary to appoint a parent coordinator pursuant to Pa.R.Civ.P. 1915.11-1 Order "due to the high conflict nature of the parties and the recent dispute regarding participation in extracurricular activities[.]" (Contempt Order at 8.) The trial court directed that Mother pay 75 percent of the cost of the parent coordinator and Father pay 25 percent. (***Id.***) The trial court explained that it required Mother to pay a larger percentage because she had twice previously been found in contempt and Father had never been found in contempt. (Trial court opinion, 12/24/19 at 8.)

In her brief on this issue, Mother fails to set forth a legal argument to support her claim. Rather, Mother complains that the trial court "fail[ed] to consider Father's role in all of these issues" and that "Father [refuses] to have the [C]hildren seen by a therapist qualified to treat children who have engaged in" certain sexual activities. (Mother's brief at 28-29.) Mother waives this issue on appeal for failure to develop a legal argument. ***See*** Pa.R.A.P. 2119(a); ***see also Butler***, 747 A.2d at 944.

In her final issue, Mother claims that the trial court "abuse[d its] discretion in failing to admit or consider exhibits that were submitted into evidence and not objected to[.]" (Mother's brief at 30.) Mother claims that she "specifically asked that all exhibits discussed by her in testimony and arguments be admitted into evidence" (*id.*), citing to the following portion of Mother's direct examination of Father:

> Q. . . . So on 9/16, you're asking me about baseball and wrestling 11 days after the Order. Is that correct? Exhibit G, I'm sorry, I'd like to submit any exhibits I discuss into evidence, please. So Exhibit G?
>
> A. Okay.

Notes of testimony, 11/22/19 at 40-41.

Mother claims that because she stated that she would "like to submit any exhibits [she] discuss[es] into evidence" (*id.*), the trial court abused its discretion in not admitting all of her exhibits. Mother fails to cite to any legal authority for this proposition, and we know of none. We have held that:

> This [c]ourt is neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the [c]ourt in the conflicting roles of advocate and neutral arbiter. When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived.

*In re S.T.S.*, 76 A.3d 24, 42 (Pa.Super. 2013) (internal citations and citation omitted). Therefore, Mother waives this issue on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/19/2020